**Michael KURTZ, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WAYNESBURG COLLEGE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 1999.

Decided March 22, 2002.

Eric P. Betzner, Washington, for petitioner.

Brian D. Walters, Pittsburgh, for respondent.

Before DOYLE, Senior Judge,[1] KELLEY, Senior Judge, NARICK, Senior Judge.

OPINION BY Senior Judge DOYLE.

Michael Kurtz (Claimant) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a Workers' Compensation Judge (WCJ) denying Claimant's Petition to Review Medical Benefits and his Petition to Reinstate Compensation Benefits. After careful review of the record, we reverse the order of the Board.

On February 27, 1993, while in the course of his employment as a janitor for Waynesburg College (Employer), Claimant slipped on a patch of ice and fell, causing his head to strike the ground. As a result, Claimant suffered a grade two concussion with retrograde amnesia and severe paracervical spasms. Claimant's injuries were acknowledged by Employer through a Notice of Compensation Payable (NCP), under which Claimant received total disability benefits at a rate of $237.50 per week.

Claimant's head pain persisted and in March 1994 Claimant underwent a right occipital neurectomy.[2] The surgery relieved Claimant's head pain and he was able to return to work in a light duty capacity as of May 1994. Approximately one month later, in June 1994, Claimant resumed his pre-injury job with Employer.[3]

Later, in October 1995, Claimant again experienced pain in the area of his original injury, prompting him to consult his treating physician, Narayan T. Nayak, M.D., a board-certified neurosurgeon who had performed the March 1994 neurectomy. Dr. Nayak concluded that Claimant's symptoms, namely, dizziness, headaches, and a burning sensation near the surgical scar from his original injury, were unrelated to his original work injury, but he suggested Claimant seek a second opinion regarding potential treatment. Claimant sought a second opinion from Donald L. Hoffman, M.D., a board-certified neurologist, who opined that Claimant's occipital nerve had not been completely excised during surgery and had in fact regenerated, causing Claimant's redeveloped pain. Thus, Dr. Hoffman believed the redeveloped pain was related to Claimant's original head injury, and he treated Claimant's pain through a series of nerve block injections that caused Claimant's head pain to tempo-

---

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle and Judge Kelley, assumed the status of senior judge on January 1, 2002.

2. This procedure involves the excision of a nerve to eliminate inflammation and pain in the area where the nerve is located; here, the area of the nerve is on Claimant's head behind his right ear. (Notes of Testimony, N.T., Deposition of Narayan T. Nayak, M.D., June 10, 1997, at 9–10).

3. Although it appears from the record that Claimant was not receiving compensation benefits upon his return to his pre-injury job, there is no information contained in the record that would indicate that there was any Supplemental Agreement suspending Claimant's benefits or a Suspension Petition filed by Employer. It appears, therefore, that Employer unilaterally ceased payment of Claimant's compensation benefits. It is noted, however, that **Claimant only seeks payment of his medical bills** and is not seeking further compensation benefits or imposition of penalties on Employer. (*See* WCJ's Findings of Fact No. 13).

rarily subside for up to eight weeks at a time.

Claimant submitted the medical bills associated with his treatments to Employer's workers' compensation insurance carrier but it refused to acknowledge that Claimant's current head pain was related to his original injury and, therefore, declined to pay for the treatments. Thereafter, Claimant, seeking a review of the NCP[4] and payment of medical expenses, filed a Petition to Review Medical Bills and a Petition to Reinstate Compensation Benefits. Employer filed a responsive answer denying all material allegations. Hearings were then held before a WCJ.

Claimant testified on his own behalf regarding the specifics of his symptoms. He explained that he was pain-free following surgery but that he again experienced head pain similar to that of the original injury accompanied by feelings of dizziness. In support of his petitions, Claimant also offered the testimony of Dr. Hoffman, who consistently testified that Claimant was suffering from a right occipital neuralgia that was related to Claimant's original injury. Dr. Hoffman explained Claimant's pain-free period by testifying to his belief that Claimant's occipital nerve had regenerated over time and was again the cause of Claimant's pain. To refute this testimony, Employer offered the deposition testimony of Dr. Nayak.

Dr. Nayak testified that Claimant only began complaining of dizziness and headaches in October 1995, approximately 20 months after Claimant's surgery. Dr. Nayak believed that these symptoms were unrelated to Claimant's original work injury as they were not originally complained of and did not persist over Claimant's

pain-free period following surgery. Dr. Nayak admitted that Dr. Hoffman's theory regarding regeneration of the occipital nerve was possible, but he believed it was unlikely. He further testified that, because the occipital nerve had been cut, Claimant's subsequent head pain and dizziness were not originating from the occipital nerve but were, rather, originating from the auricular nerve, a nerve in the same area, which he could not say was unrelated to the work injury.

The WCJ reviewed the evidence and determined that the testimony of Dr. Nayak was more credible than the testimony of Dr. Hoffman. The WCJ explained his findings by noting that Dr. Nayak had performed the operative procedure and was more familiar with Claimant's complaints of pain and, unlike Dr. Nayak, Dr. Hoffman was not a surgeon and was not as familiar with the surgery performed on Claimant. The WCJ also found that Claimant's testimony was credible with regard to his lack of pain following surgery, but incredible as it related to the recurrence of head pain. The WCJ concluded that Claimant failed to meet his burden of proof and, thus, the treatments Claimant received as a result of his head pain were not causally related to the original work injury.

■ Claimant appealed the decision to the Board alleging that specific findings of fact were not supported by substantial evidence, and that the WCJ improperly placed the burden of proof on Claimant. The Board determined that the WCJ specifically decided all issues dealing with evidentiary weight, conflicting medical testimony, and credibility of the witnesses.

---

4. We have sparingly permitted review of petitions seeking to revise a description of an injury that arose as a natural consequence of the work-related injury for which an employer had already admitted liability. *See Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital),* 705 A.2d 503 (Pa.Cmwlth.1998).

The Board agreed that Claimant had the burden of proving, by unequivocal medical evidence, that his current condition was causally related to his work injury and that Claimant failed to meet that burden. The Board determined that the order of the WCJ was grounded on substantial evidence and affirmed. This appeal followed.[5]

■ Claimant first contends that the WCJ improperly placed on him the burden of proving that the recurrence of his head pain and other symptoms was causally related to his original work injury. Claimant suggests that the symptoms were obviously related to his original work-related injury and, therefore, the burden was on Employer to establish that the symptoms were unrelated to the original injury. We agree.

■ It is accepted that, pursuant to the Workers' Compensation Act (Act),[6] an employer is only liable to pay for a claimant's medical expenses that arise from and are caused by a work-related injury. 77 P.S. § 411(1); *McDonnell Douglas Truck Services, Inc. v. Workmen's Compensation Appeal Board (Feldman)*, 655 A.2d 655 (Pa.Cmwlth.1995). The burden is on the claimant to establish that an injury is indeed work-related. *McDonnell Douglas; Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.)*, 141 Pa.Cmwlth. 438, 595 A.2d 781 (1991), *appeal denied*, 529 Pa. 628, 600 A.2d 543 (1991). Once a claimant has established

that the injury is causally related to his employment, or liability for the injury has been acknowledged by an employer through a NCP, and there has not been a termination of benefits, the claimant is not required to continually establish that medical treatment of that compensable injury is causally related because the injury for which the claimant is treating has already been established. *See Gens v. Workmen's Compensation Appeal Board (Rehabilitation Hospital of Mechanicsburg/AETNA Life and Casualty)*, 158 Pa.Cmwlth. 313, 631 A.2d 804 (1993), *appeal denied*, 538 Pa. 618, 645 A.2d 1321 (1994); *Lehigh Valley Refrigeration Services v. Workmen's Compensation Appeal Board (Nichol)*, 120 Pa. Cmwlth. 434, 548 A.2d 1321 (1988). Rather, in this regard, it is the employer's burden to establish that medical treatment associated with the injury was unreasonable or unnecessary. *See id.*[7] If, however, a claimant receives medical treatment for new symptoms that allegedly arise from the compensated injury, and the employer refuses to pay the associated bills, the burden of establishing that the symptoms and treatments are related to the compensable injury turns on whether the connection is **obvious**. *See e.g., Hilton Hotel Corp. v. Workmen's Compensation Appeal Board (Totin)*, 102 Pa.Cmwlth. 528, 518 A.2d 1316 (1986).

■ An "obvious" connection "involves a nexus that is so clear that an untrained lay person would not have a

---

5. This Court's standard of review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

7. *See also Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314 (Pa.Cmwlth.), *appeal denied*, 546 Pa. 657, 684 A.2d 558 (1996) (explaining that a petition to review medical treatment goes to the question of causal connection, whereas utilization review goes to the question of reasonableness and necessity of medical treatment).

problem in making the connection between" the new symptoms and the compensated injury; the new symptoms would be a "natural and probable" result of the injury. *Tobias* at 784; *see McDonnell Douglas*. If the new symptoms and the compensable injury are obviously related, and benefits have not been terminated, then the claimant will benefit from the presumption that the new symptoms are related to the compensable injury and, thus, his employment, and it will be the burden of the employer to prove that the new symptoms complained of are unrelated to the compensable injury. If, however, the connection is not obvious, then the burden will be on the claimant to establish the connection through unequivocal medical testimony. *McDonnell Douglas; Tobias; Hilton Hotel.*

In the case *sub judice*, Claimant's head injury was acknowledged by Employer through the NCP, and, thus, Claimant's original injuries were admittedly compensable and related to his employment. There is no indication from the record that there was any termination of benefits or any final receipt.[8] Accordingly, any natural and probable symptoms arising from Claimant's compensable head injury are presumed to be related to that injury and it is Employer's burden to establish otherwise.

Claimant complained of dizziness and headaches and a burning sensation that were in the same area as his original head pain; just two inches from the scar left by his surgery. Claimant indicated that the pain he felt was of the same type, although not as intense, as from the initial injury. It is difficult to imagine that similar pain appearing in such close proximity to the area of the original injury is not a natural and probable result of the original injury and, therefore, obviously related to such injury.[9] Although the pain-free period of time between Claimant's surgery and the recurrence of pain does not bolster the obviousness of the connection, the passage of time alone will not defeat it. We, therefore, hold that Claimant's new symptoms obviously appear to be related to the original injury and it was Employer's burden, under these facts, to establish that the symptoms are indeed unrelated to the original compensable injury.

∎ Having determined that the burden of proof is properly placed on Employer, we address Claimant's next contention that Employer did not satisfy its burden because the testimony of Dr. Nayak was equivocal and did not constitute substantial evidence upon which the WCJ could base his findings. With this contention we must also agree.

∎ Questions of credibility and weight of evidence are within the sole province of the WCJ and will not be disturbed on review by this Court if they are supported by substantial, competent evidence. *Lehigh County Vo–Tech School v.*

---

**8.** The record contained two documents marked "Final Statement of Account," which were not signed by Claimant and simply summarized benefit payments made to Claimant. Furthermore, Employer has not suggested that there was a termination of benefits.

Again, we must note that it is unclear from the record whether there was a proper suspension of benefits. Claimant, prior to the recurrence of his headaches, returned to work without loss of earnings. Employer, however, never filed a Suspension Petition, and there is no indication that any Supplemental Agreement was ever signed suspending benefits.

**9.** The WCJ himself, although making no specific finding as to the *obviousness* of Claimant's head pain being related to his original injury, acknowledged the connection when he said "I would imagine I'll be getting a Penalty Petition, [sic] in this matter because of the obviousness of the injury symptoms." (N.T., January 8, 1997, at 17).

*Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). Medical testimony will be determined incompetent if it is equivocal, which is a question of law that is fully reviewable by this Court. *Cordero v. Workmen's Compensation Appeal Board (H.M. Stauffer & Sons, Inc.)*, 664 A.2d 1106 (Pa.Cmwlth. 1995), *appeal denied*, 543 Pa. 732, 673 A.2d 337 (1996). Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt. *See Reinforced Molding Corp. v. Workers' Compensation Appeal Board (Haney)*, 717 A.2d 1096 (Pa.Cmwlth.1998). Dr. Nayak's testimony is such testimony and does not constitute substantial competent evidence.

Dr. Nayak, on direct examination, discussing Claimant's new complaints of dizziness and headaches, testified as follows:

Q. At that point, Doctor, did you form any opinions as to the symptoms that Mr. Kurtz had at that examine [sic]?

A. Understanding the problem, which is major complaints [of] dizziness and headaches[,] ... it was **unlikely** to say that his symptoms were **related** to his original injury.

Q. Why do you say that?

A. Because dizziness, which is associated with inner ear or other brain stem pathology, was not evident at the time when he was seen originally. And *his symptomatology of burning sensation behind the right ear though it is related to the original problem,* is unlikely to produce dizziness or severe headaches in the distribution that he was complaining about severe headaches. So it was my feeling that the symptomatology **may not be** —— or clinically at least **unrelated** to his original problem....

(N.T., Deposition of Dr. Nayak at 11) (emphasis added). On cross examination, Dr. Nayak continued his testimony as follows:

Q. ... In November you said that you didn't believe his problems, that he came to see you about, were related to the work injury. By February, had you changed that opinion?

A. No.

Q. So you don't believe his current problems are related to his work injury at all, that he saw you about?

A. If you are asking me a particular question with regard to **dizziness and headaches** which were present at the time of 11–1–1995, **I do not think those are the ones which are unrelated to the present problem** of right occipital nerve pain and reappearance of burning sensation.

Q. So the reappearance of the burning sensation is related to the injury?

A. I do believe that.

(N.T., Deposition of Dr. Nayak at 15) (emphasis added). Dr. Nayak's direct testimony regarding the dizziness and headaches was contradicted on cross examination. From this testimony on cross, the only thing that is clear, and unequivocal, is that Dr. Nayak believed the burning sensation that Claimant complained of was related to the original work injury. His testimony as a whole was unclear regarding whether he believed that the dizziness and headaches were related to the original injury. Thus, Dr. Nayak's testimony regarding those symptoms was equivocal and did not constitute substantial, competent evidence upon which a finding in favor of Employer could properly be based.

For the foregoing reasons, the order of the Board is reversed and Employer is ordered to pay Claimant's medical expenses associated with the treatment of his ongoing symptoms arising from the February 27, 1993, work injury.

## *ORDER*

**NOW,** *March 22, 2002,* the order of the Board in the above-captioned matter is hereby reversed, and Employer is directed to pay Claimant's medical expenses in accordance with this opinion.