IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Haslam,                          :
                   Petitioner           :
                                        :
            v.                          :  No. 1655 C.D. 2016
                                        :  SUBMITTED:  February 10, 2017
Workers' Compensation Appeal            :
Board (London Grove                     :
Communication),                         :
                   Respondent           :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
JUDGE HEARTHWAY                 FILED:  September 1, 2017


        Thomas Haslam (Claimant) petitions for review of the September 9, 2016 order of the Workers' Compensation Appeal Board (Board), which reversed the decision of a workers' compensation judge (WCJ).  The Board granted the petition of London Grove Communication (Employer) to review utilization review (UR) determination and denied Claimant's petition to review medical treatment and/or billing (Medical petition).  For the reasons set forth below, we reverse.

        On February 16, 1998, Claimant was injured in the course and scope of his employment with Employer when he fell off of a building and shattered his right ankle, tibia, and fibula, and suffered a left calcaneus fracture, as well as

injuries to his neck and low back. Employer issued a notice of compensation payable (NCP), accepting Claimant's injury.[1] A supplemental agreement was entered into between the parties on January 29, 2001. The supplemental agreement modified Claimant's indemnity benefits as of October 24, 2000, due to Claimant's return to work with a loss of earnings. The injury information refers to Claimant's injury as "R & L Foot Fracture." (Supp. Agrmt., at 1.) Thereafter, in 2008, the parties entered into a compromise and release agreement (C&R Agreement) and settled the indemnity portion of the case for $110,000.00.[2]

Thereafter, Employer filed a UR request, seeking review from January 6, 2014 and ongoing "on any and all compounded medication" provided by Evan D. Frank, M.D. (UR request, at 1.) On February 19, 2014, the UR was assigned to Administrative Reviewer Michael J. Drass, M.D. Dr. Drass performed the UR of Claimant's compounded medications from January 6, 2014, and prospectively, and determined that they were reasonable and necessary expenses related to the acknowledged work-injury.

On May 20, 2014, Employer filed the instant UR review petition, challenging the UR determination of Dr. Drass. Employer argued that the condition Claimant was being treated for by Dr. Frank, RSD/CRPS,[3] was not

---

[1] The NCP is not in the record, thus the injuries accepted by Employer in the NCP are unknown.

[2] The copy of the C&R Agreement presented at the hearing was not dated or signed. However, all parties agree to its content and admission into the record.

[3] RSD, or reflex sympathetic dystrophy, is now referred to as CRPS, or complex regional pain syndrome.

2

expressly accepted by Employer in the C&R Agreement. Thus, Employer asserted that Dr. Drass' UR determination was in error.

On May 30, 2014, Claimant filed the Medical petition alleging an incorrect injury description and worsening of his condition. Claimant requested recognition of the RSD/CRPS as being related to his February 16, 1998 work injury and a determination regarding whether certain treatment was related thereto.

Hearings were held before the WCJ, at which Employer presented the April 23, 2014 UR performed by Dr. Drass. Dr. Drass determined that the compounded medication reviewed was reasonable and necessary. (UR Determination, at 2.) Dr. Drass' UR report indicated a diagnosis from Dr. Frank of "neuropathic pain of both feet." (UR Report, at 2.) Dr. Drass reviewed Claimant's medication regimen, which included various doses of Vioxx, Elavil, OxyContin, and Percocet each day. Dr. Drass listed Claimant's diagnoses as RSD/CRPS of the lower extremities with increasing depression secondary to situational anxiety, low back pain, chronic lower extremity pain. (*Id.*) Dr. Drass looked at the "compounded medication" prescribed by Dr. Frank from January 6, 2014, and specifically, the standard antineuropathic cream.[4] (*Id.*, at 3.) Dr. Drass determined that the antineuropathic cream does provide Claimant "with some good relief of his lower extremity RSD/CRPS complaints, thereby allowing him to continue to

---

[4] The antineuropathic cream contains compound agents of ketamine, gabapentin, amitriptyline, baclofen, clonidine, and bupivacaine and is to be applied two to three times a day, as needed. (UR Report, at 3.)

perform his daily activities on a fairly remarkable level." (*Id.*) Thus, he concluded that the compounded medication was reasonable and necessary. (*Id.*, at 5.)

Claimant also presented the July 22, 2014 narrative report of Dr. Frank. The report was dictated at Claimant's request to justify Dr. Frank's treatment regarding the medications prescribed to Claimant from January 6, 2014 and forward. Dr. Frank reported that Claimant had undergone surgical fusion, and open reduction internal fixation surgery due to the fractures he suffered after the work-related fall. (Dr. Frank Report, at 1.) Dr. Frank observed that the fractures healed but Claimant had continuing pain. (*Id.*) Dr. Frank diagnosed Claimant with RSD/CRPS and sees Claimant every three to six months. (*Id.*) Dr. Frank treats Claimant's pain with various medications, including the antineuropathic cream, which Claimant found beneficial. (*Id.*) Dr. Frank stated that "the treatment involving the compounded medications are appropriate and necessary for controlling this patient's pain and symptoms from RSD." (*Id.*, at 2.)

The WCJ found the reports of Dr. Frank and Dr. Drass credible and persuasive. The WCJ stated that:

> Both Dr. Frank and Dr. Drass support the care under review as reasonable and necessary; both also support additional injuries as noted above as being within the ambit of accepted injuries as described in the C&R Agreement. In this regard, even without reference to "various injuries" under the C&R [Agreement] (under which the ambit of additional conditions would qualify), relief can appropriately be granted to the Claimant in that this record supports the additional conditions as resulting from the accepted "R and L Foot Fracture" work injuries described in both the Supplemental Agreement and the C&R Agreement. The record as presented clearly

4

implicates the foot fractures as the operative reason for Claimant's continuing work related problems despite healing of the "fractures" themselves—Claimant's continuing problems flow from the existing "fractures."

(F.F. No. 8.)

The WCJ denied Employer's Review UR petition and granted Claimant's Medical petition, finding the treatment under review reasonable and necessary as determined by Dr. Drass and that the treatment for RSD/CRPS was within the scope of the C&R Agreement. Employer appealed to the Board.

The Board determined that the C&R Agreement precluded Claimant from expanding the description of his injury. The Board agreed that Employer "remained responsible for all reasonable and necessary medical expenses related to the acknowledged injuries." (Board Op. at 1.) However, the Board found that Claimant's RSD/CRPS diagnosis was not acknowledged by the C&R Agreement. Thus, it determined that Employer is not responsible for the medical expenses related to the RSD/CRPS diagnosis. The Board noted that the C&R Agreement was entered into approximately five years after Claimant began treating with Dr. Frank for the RSD/CRPS. The Board asserted that "[t]o construe 'various injuries' as wholly open-ended is to defeat the purpose of encouraging settlements and finality." (Board Op. at 7.) Thus, the Board reversed the WCJ's decision. Claimant now petitions this Court for review.[5]

---

[5] Our review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Employer's UR Petition

The utilization review process provides an avenue for challenging whether medical treatment provided under the Workers' Compensation Act[6] (Act) is reasonable and necessary. Section 306(f.1)(6)(i), 77 P.S. § 531(6)(i). In utilization review, the employer bears the burden of proving that the challenged medical treatment is unreasonable or unnecessary. *Gary v. Workers' Compensation Appeal Board (Philadelphia School District)*, 18 A.3d 1282, 1288 (Pa. Cmwlth. 2011). In determining reasonableness and necessity of a prescribed medication, it is appropriate for the administrative reviewer to assess the "treatment in the context of the entire course of care for the work-related injury." *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals)*, 761 A.2d 1258, 1262 (Pa. Cmwlth. 2000) (*en banc*).

In this case, Employer does not contend that the challenged treatment is not a reasonable and necessary treatment for Claimant's pain, which is described by Drs. Frank and Drass as RSD/CRPS. Rather, Employer argues that it should not be liable for treatment for RSD/CRPS because in the C&R Agreement Employer only accepted responsibility for "fractured right and left feet."

In *Bloom v. Workers' Compensation Appeal Board (Keystone Pretzel Bakery),* 677 A.2d 1314 (Pa. Cmwlth. 1996), this Court discussed the scope of the UR process. Pursuant to regulation, the UR process is the proper method for determining whether disputed treatment is reasonable and necessary. *Id.* at 1318;

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

34 Pa. Code § 127.406(a). However, the UR process is *not* the proper method to determine the *causation* of an injury or condition. *Bloom*, 677 A.2d at 1318; 34 Pa. Code § 127.406(b). In *Bloom* we held that the regulation recognized—

> . . . a distinction between an issue concerning causation as opposed to reasonableness and necessity of treatment. An action concerning causation cannot be raised before a [utilization review organization]; therefore, it must be raised in a petition that is intended to be heard directly by a WCJ. Likewise, an action concerning the reasonableness and necessity of treatment is to be raised in a request for UR that will be submitted to a [utilization review organization].

677 A.2d at 1318.

Similarly, the UR process, which is tailored to the narrow question of medical necessity and reasonableness, is not the proper vehicle for an employer to litigate the question of whether a particular injury or condition is within the scope of an injury acknowledged in a C&R agreement. *See* 34 Pa. Code § 127.406. As with a causation challenge, the proper procedure for an employer to address the scope of an acknowledged injury would be to file a petition for review to be heard by a WCJ. *See* Section 413(a) of the Act, 77 P.S. § 771. The Board erred by reversing the decision of the WCJ denying Employer's UR petition.

Claimant's Medical Petition

Claimant's argument may be understood as contending that the Board erred in reversing the WCJ's decision to grant his Medical petition in two ways: (1) in determining that Claimant was precluded from expanding or modifying the

7

description of his injury in the C&R Agreement; and (2) in determining that Claimant's treatment for pain was beyond the scope of the treatment the Employer agreed to pay for in the C&R Agreement.

In *DePue v. Workers' Compensation Appeal Board, (N. Paone Construction, Inc.),* the claimant sought to amend the description of an acknowledged work injury more than two years after entering into a C&R agreement that identified the injury as "a severe closed head injury with seizure disorder and short term memory loss." 61 A.3d 1062, 1064 (Pa. Cmwlth. 2013). Specifically, the claimant sought to add a left shoulder injury to that description, arguing that the shoulder injury had been erroneously omitted from the articulation of the acknowledged injury in the C&R agreement. *Id.* at 1065.

This Court rejected that argument and ruled that once a valid C&R agreement is approved, "it is final, conclusive[,] and binding on the parties." *Id.* at 1067. An approved C&R agreement may only be set aside "upon a clear showing of fraud, deception, duress, mutual mistake, or unilateral mistake caused by" fault of the opposing party. *Id.* Otherwise, the C&R agreement may not be amended. *Id.*

In this case, there is no allegation or evidence of fraud, deception, duress or mistake. There is, therefore, no basis to set aside or amend the C&R Agreement. *DePue.* Accordingly, the Board was correct in concluding that the Claimant could not expand or modify the description of the injury acknowledged in the C&R Agreement.

8

However, the second prong of Claimant's argument—that the Board erred in determining that the medical treatment at issue was beyond the scope of the C&R Agreement—requires us to look at more than just the description of the acknowledged injury. We must also look at the description of Employer's accepted responsibility for medical treatment causally related to the injury. In this case, the C&R Agreement is set forth on a standardized form generated by the Department of Labor and Industry, Bureau of Workers' Compensation.[7] The document describes Claimant's injury as "[v]arious injuries and bodily parts including but not necessarily limited to fractured right and left feet." (C&R Agreement, ¶ 4, at 1.) In response to a prompt for a summary of "all benefits to be paid on and after the date of this stipulation or agreement for reasonable and necessary medical treatment causally related to the injury and the length of time such payment of benefits is to continue," the C&R Agreement states:

> The Workers' Compensation Insurance Carrier, herein, agrees to pay for all reasonable and necessary medical expenses that are related to the aforesaid acknowledged work-related injury (ies) pursuant to the terms and conditions of the Pennsylvania Workers' Compensation Act, as amended. The Workers' Compensation Insurance Carrier, herein, reserves the right to submit any bill(s) and expense(s) to Utilization Review and/or use any other provision(s) of the Act regarding the payment of any bills for medical treatment as aforesaid.

(*Id.*, ¶ 10, at 2.)

---

[7] The form is titled "Compromise and Release Agreement by Stipulation pursuant to Section 449 of the Workers' Compensation Act," or "LIBC-755."

9

Thus, Employer agreed to "pay for all reasonable and necessary medical expenses *that are related to the. . . acknowledged work-related injury. . . ."* (C&R Agreement, ¶ 10, at 2) (emphasis added.) In the C&R Agreement, Employer did not agree to pay only for medical treatment of Claimant's fractured feet; Employer agreed to pay for all reasonable and necessary medical expenses *related to* Claimant's fractured feet.[8]

When there is a dispute regarding whether medical treatment is beyond the scope of a C&R agreement, assignment of the burden of proof depends on the relationship between the treatment and the acknowledged injury. Though there was no C&R agreement in *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College),* 794 A.2d 443 (Pa. Cmwlth. 2002), we find this case to be instructive. In *Kurtz,* the employer accepted responsibility for the claimant's head injury, which was described as "a grade two concussion with retrograde amnesia and severe paracervical spasms." *Id.* at 445. More than one year later, the claimant sought medical treatment for pain that emerged "in the area of the original injury." *Id.* However, employer refused to pay for this treatment. *Id.* at 446.

The claimant in *Kurtz* then sought review with a WCJ, who ruled for the employer after determining that the *claimant* failed to meet his burden of proving with "unequivocal medical evidence. . . that his current condition was causally related to his work injury. . . ." *Id.* at 447. The claimant appealed to this

---

[8] The C&R Agreement clearly limited Employer's responsibility for the *indemnity* aspects of Claimant's work injury. However, the language of ¶ 10 of the C&R Agreement does not expressly limit Employer's responsibility for medical expenses associated with the acknowledged injury in any way. Consequently, Employer remains responsible for medical treatment of the acknowledged injury.

Court, arguing that because his symptoms were "obviously related to his original work-related injury" the burden should be on the *employer* "to establish that the symptoms were unrelated to the original injury." *Id.* This Court agreed with the claimant:

> If. . . a claimant receives medical treatment for new symptoms that allegedly arise from the compensated injury, and the employer refuses to pay the associated bills, the burden of establishing that the symptoms and treatments are related to the compensable injury turns on whether the connection is *obvious. See e.g., Hilton Hotel Corp. v. Workers' Compensation Appeal Board (Totin),* [518 A.2d 1316 (Pa. Cmwlth. 1986)].
>
> An "obvious" connection "involves a nexus that is so clear that an untrained lay person would not have a problem making the connection between" the new symptoms and the compensated injury; the new symptoms would be a "natural and probable" result of the injury [*Tobias v. Workers' Compensation Appeal Board (Nature's Way Nursey, Inc.),* 595 A.2d (Pa. Cmwlth. 1991); *see McDonnell Douglas Truck Services, Inc. v. Workers' Compensation Appeal Board (Feldman),* 655 A.2d 655 (Pa. Cmwlth. 1995)]. If the new symptoms and the compensable injury are obviously related, and benefits have not been terminated, then the claimant will benefit from the presumption that the new symptoms are related to the compensable injury and, thus, his employment, and it will be the burden of the employer to prove that the new symptoms complained of are unrelated to the compensable injury.

*Id.* at 447-48.

In this case, Employer accepted responsibility for treatment for Claimant's fractured feet. Thereafter, Claimant sought treatment for pain in those

11

feet. There exists an obvious connection between the injury and the pain. For Employer to avoid responsibility for the medical expenses resulting from treatment of the pain in Claimant's feet, Employer must prove that the treatment is for an injury that is distinct from the acknowledged injury. *Kurtz.* However, Employer presented no such medical evidence to the WCJ. In fact, all of the medical evidence presented tended to show the opposite. Employer merely argued that RSD/CRPS is not specifically acknowledged in the C&R Agreement. This argument, without supporting medical evidence, is insufficient to show that the RSD/CRPS is a distinct injury beyond the scope of the C&R Agreement. The holding in *DePue* does not compel a different result on this question, as the relevant issue there was whether the claimant could amend a C&R agreement absent evidence of fraud, deception, duress or mistake, not whether treatment was within the scope of a C&R agreement.

The Board erred in concluding that Employer was not responsible for medical expenses related to Claimant's RSD/CRPS where (1) substantial evidence in the record supported the WCJ's determination that the condition was related to the acknowledged work injury; (2) the C&R Agreement stated that Employer was responsible for medical expenses related to the acknowledged work injury; and (3) Employer failed to present any evidence that the challenged treatment was beyond the scope of the C&R Agreement.

Accordingly, we reverse.

_____
JULIA K. HEARTHWAY, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Haslam,                                  :
                Petitioner                 :
                                           :
           v.                          :  No. 1655 C.D. 2016
                                           :
Workers' Compensation Appeal            :
Board (London Grove                              :
Communication),                                     :
                Respondent              :

## O R D E R

AND NOW, this 1st day of September, 2017, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed.

_____
JULIA K. HEARTHWAY, Judge