# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark L. Boatman,                              :
                                             :
                      Petitioner             :
                                             :
              v.                             :   No. 1771 C.D. 2017
                                             :   Submitted: April 20, 2018
Workers' Compensation Appeal                 :
Board (Bortner Bros, Inc.),                  :
                                             :
                      Respondent             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED: August 3, 2018**


Mark L. Boatman (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of a Workers' Compensation Judge (WCJ). The WCJ denied Claimant's petition to review compensation benefits (Review Petition) seeking to modify the description of his work injury and denied a petition for penalties (Penalty Petition) filed by Claimant alleging that his employer, Bortner Bros., Inc. (Employer), failed to pay medical bills related to his work injury. For the reasons that follow, we affirm.

Claimant sustained a work-related injury to his right shoulder on May 19, 2008. (Nov. 23, 2016 WCJ Decision Finding of Fact (F.F.) ¶¶2, 3(a).) On January 11, 2013, the WCJ circulated a decision in which he approved a

Compromise and Release Agreement (C&R Agreement) between the parties. (*Id.* F.F. ¶2; Jan. 11, 2013 WCJ Decision, C&R Agreement, Reproduced Record (R.R.) 1a-11a.) Pursuant to the agreement, Claimant and Employer resolved the wage loss portion of his claim against Employer, but Employer remained responsible for reasonable and necessary medical benefits related to Claimant's May 19, 2008 work injury. (C&R Agreement ¶¶6, 7, 10, 14(c), 16, R.R. 6a-7a.)

In February 2013, April Armstrong, M.D., of the Penn State Hershey Medical Center, operated on Claimant's right shoulder. (Nov. 23, 2016 WCJ Decision F.F. ¶3(a).) Claimant received physical therapy following the surgery through July 2013. (*Id.* F.F. ¶3(e).) In October 2013, Claimant was involved in a motor vehicle accident, in which his right shoulder struck the steering wheel. (*Id.* F.F. ¶3(b).) On April 1, 2014, the WCJ issued a decision on utilization review petitions filed by Employer and Claimant regarding treatment Claimant had received for his shoulder injury with several providers. Among the treatments addressed in the decision, the WCJ ruled that Dr. Armstrong's February 2013 surgery on Claimant and the associated pre- and post-operative care were reasonable and necessary, noting that Claimant reported that the pain in his right shoulder was greatly reduced following the surgery and the functioning in his shoulder was greatly improved. (Apr. 1, 2014 WCJ Decision F.F. ¶17, R.R. 15a.)

Claimant filed the Penalty Petition on May 12, 2015, alleging that Employer had failed to pay for medical bills from the Penn State Hershey Medical Center. (Certified Record (C.R.) Item 2, Penalty Petition; C.R. Item 17, Claimant Exhibit 1, Medical Bills.) Claimant filed the Review Petition on September 15, 2015. (C.R. Item 5, Review Petition.) Claimant testified at a hearing before the

WCJ[1] in support of the petitions. Additionally, Claimant submitted a report by Dr. Armstrong, who performed Claimant's February 2013 surgery, while Employer submitted two reports by Stanley Askin, M.D., who reviewed Claimant's medical records and who had performed an independent medical examination of Claimant for previous litigation.

On November 23, 2016, the WCJ issued a decision and order denying the Review Petition and Penalty Petition. The WCJ concluded that Claimant was barred from attempting to add to the mutually agreed upon and judicially approved final description of Claimant's work injury contained in the C&R Agreement as he had not shown that he was coerced or misled with respect to the finality of the C&R Agreement or the description of the injury in the agreement. (Nov. 23, 2016 WCJ Decision F.F. ¶13.) The WCJ further concluded that, even if Claimant was not barred from seeking to modify the injury description in the C&R Agreement, the evidence presented did not carry Claimant's burden to allow for an expansion of the description of the work injury to include the glenohumeral arthritis for which Dr. Armstrong had been treating Claimant since April 2014. (*Id.* F.F. ¶¶17, 18, Conclusion of Law (C.L.) ¶3.) The WCJ found Claimant's testimony to be credible and consistent but not ultimately determinative as to the medical issue of whether his work injury should be expanded. (*Id.* F.F. ¶15.) The WCJ found the opinion of Employer's medical expert, Dr. Askin, that Claimant's glenohumeral arthritis was not causally related to his work injury to be more credible and persuasive than the opinion of Dr. Armstrong. (*Id.* ¶¶16, 17.) Addressing Claimant's claim that

---

[1] The Review Petition and Penalty Petition were assigned to WCJ Leah Lewis, and WCJ Lewis authored the decision currently under review. The two prior WCJ decisions discussed in this opinion that approved the C&R Agreement and ruled on the utilization review petitions were issued by WCJ Karl Peckmann.

Employer failed to pay for medical bills for the work-related injury, the WCJ found that the bills related to Claimant's glenohumeral arthritis and therefore Employer was not responsible for this care.[2] (*Id.* F.F. ¶20.) Concluding that Employer had not violated the Workers' Compensation Act (Act),[3] the WCJ denied the Penalty Petition. (*Id.* F.F. ¶21, C.L. ¶5.) Claimant appealed to the Board, which affirmed the WCJ's decision and order.

On appeal to this Court,[4] Claimant argues that the WCJ erred in concluding that Claimant's treatment for glenohumeral arthritis was not related to his May 19, 2008 work injury, which the WCJ recognized in her decision had not fully resolved or ceased to require any treatment. Claimant argues that the WCJ confused diagnosis with injury, and the Review Petition did not seek to alter the understanding of his work injury to add an additional body part but rather the Review Petition was filed in light of an updated diagnosis pertaining to the same right shoulder work injury. Claimant argues that the WCJ further erred in placing the burden on him to prove that the arthritis in his right shoulder for which he began receiving treatment in April 2014 was causally related to his May 19, 2008 work

[2] In addition to medical bills for the arthritis treatment, Claimant also submitted to the WCJ a December 12, 2012 bill for an office visit and a February 22, 2013 bill for a lab test. (Nov. 23, 2016 WCJ Decision F.F. ¶8(a), (b).) The WCJ found as to the December 12, 2012 bill that Employer had submitted documentation to demonstrate that it had already paid the bill and as to the February 22, 2013 bill that the bill may relate to pre-operative treatment for the February 2013 surgery by Dr. Armstrong that was determined in the April 1, 2014 WCJ decision to be related to the work injury, and therefore Claimant was invited to resubmit this bill with further explanation. (*Id*. F.F. ¶20.) Claimant does not challenge these findings on appeal.

[3] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1, 2501–2708.

[4] This Court's review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. *Gahring v. Workers' Compensation Appeal Board (R and R Builders)*, 128 A.3d 375, 379 n.6 (Pa. Cmwlth. 2015).

injury, when in fact the burden should have fallen on Employer to prove that his current symptoms were not related to his injury. Claimant contends that he was entitled to a presumption that the symptoms he began receiving treatment for in 2014 were related to his work injury under our decision in *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College),* 794 A.2d 443 (Pa. Cmwlth. 2002), which held that where there is an "obvious" connection between new symptoms and the compensable work injury, the claimant is entitled to a presumption of relatedness and the burden falls on the employer to prove that the new symptoms are <u>not</u> related to the original injury. *Id.* at 447-48. Claimant argues that Employer could not have met its burden because Employer's expert offered no medical evidence that glenohumeral arthritis was distinct from the work injury and instead only relied on the fact that glenohumeral arthritis is not included in the description of the injury in the C&R Agreement.

Before turning to Claimant's challenges to the WCJ's ruling on the merits of his petitions, we must first address Employer's argument that the WCJ correctly ruled that Claimant was barred from attempting to expand the definition of his work injury that had been previously agreed to in the C&R Agreement and ratified in the WCJ decision approving the C&R Agreement. Pursuant to Section 449(b) of the Act,[5] when parties agree to the compromise and release of a claim, the C&R Agreement must be submitted to a WCJ, who shall approve the agreement following a determination that the agreement contains all of the necessary information provided for in the Act and that the claimant understands the full legal significance of the document. 77 P.S. § 1000.5(b). The Act requires that every C&R Agreement set forth details of the claim, including "the nature of the injury," and

---

[5] Added by Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5(b).

that the "agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical expenses." 77 P.S. § 1000.5(b), (c)(3).

The C&R Agreement here settled the indemnity portion of Claimant's claim against Employer and any other claim Claimant could bring against Employer but provided that "Employer shall continue to pay for reasonable and necessary medical treatment causally related to Claimant's May 19, 2008 work-related injury on and after the date of this settlement" and that Claimant retained the right to file a penalty petition regarding the "open medical portion of the claim." (C&R Agreement ¶¶10, 16, R.R. 6a-8a.) Claimant's work injury was described in the agreement as

> a right shoulder rotator cuff tear with subacromial impingement, as well as bicep involvement, post rotator cuff repair with subacromial decompression with reattachment of the bicep tendon, acromioclavicular arthritis, small partial tear, labral involvement, and bicep tendon involvement, and post manipulated right shoulder under anesthesia to increase range of motion and cleaning of the labrum and bone underlying the rotator cuff arthroscopically.

(*Id.* ¶4, R.R. 5a.). The C&R Agreement further states:

> [I]t is specifically understood and agreed that this settlement includes any and all injuries or alleged injuries sustained by Claimant on May 19, 2008, or resulting therefrom, regardless of what terms are used to describe the injuries…. To the extent that Claimant may have sustained additional injuries while employed at [Employer] or related thereto, Claimant hereby acknowledges that any and all such injuries are included in and fully resolved by this [C&R] Agreement even though not specifically listed. As of the date this [C&R] Agreement is approved, Claimant understands that he may NEVER seek benefits of any nature or type available pursuant to the Pennsylvania Workers' Compensation Act from [Employer] or [its insurer] for any injuries causally

6

related to his past employment with [Employer] except as specifically reserved herein.

(*Id.*, R.R. 8a.)

As this Court has previously explained, by enacting Section 449 of the Act, the General Assembly intended to place C&R Agreements "'on equal footing with civil settlements' in order to promote a public policy of encouraging the parties to settle disputes and bring them to finality." *DePue v. Workers' Compensation Appeal Board (N. Paone Construction, Inc.)*, 61 A.3d 1062, 1066 (Pa. Cmwlth. 2013) (quoting *Stroehmann Bakeries, Inc. v. Workers' Compensation Appeal Board (Plouse),* 768 A.2d 1193, 1196 (Pa. Cmwlth. 2001)). Thus, once a C&R Agreement is approved by a WCJ, it is final, conclusive and binding on the parties, and an agreement may not be set aside absent a clear showing of fraud, deception, duress, mutual mistake or unilateral mistake attributable to an opposing party's fault. *Haslam v. Workers' Compensation Appeal Board (London Grove Communication)*, 169 A.3d 704, 709 (Pa. Cmwlth. 2017); *DePue*, 61 A.3d at 1067. Any issue that is not expressly reserved in a C&R Agreement may not be raised in a later proceeding. *DePue*, 61 A.3d at 1067; *Department of Labor and Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (U.S. Food Service),* 932 A.2d 309, 314-15 (Pa. Cmwlth. 2007).

In *DePue*, the claimant and employer entered into an approved C&R Agreement to resolve the indemnity portion of the claim with the employer agreeing to continue to pay "all reasonable and related medical bills"; the injury was described in the agreement as "any and all injuries suffered at [the employer], including but not limited to the accepted injuries of a severe closed head injury with seizure disorder and short term memory loss." 61 A.3d at 1064 (emphasis removed). Two years after the agreement was approved, the claimant filed a penalty and review

petition alleging the employer's failure to pay medical bills and seeking to correct the description of the injury to reflect a left shoulder injury which was allegedly erroneously omitted from the final draft of the agreement. *Id.* at 1064-65. This Court rejected the argument that the description of the injury in the agreement should be corrected to include the left shoulder injury, holding that the claimant's failure to "expressly reserve his right to add a new injury to the description of his work injuries" precluded him from doing so after the C&R Agreement's approval. *Id.* at 1067. In addition, the Court rejected the claimant's argument based on contract construction principles that the description of the injury in the agreement as "any and all injuries" sustained at the workplace included a left shoulder injury as there was no ambiguity that the employer had never accepted liability for the left shoulder injury during the course of the litigation. *Id.* at 1068.

In *Haslam*, this Court similarly held that a claimant may not expand or modify the description of an injury acknowledged in a C&R Agreement unless that right is explicitly reserved in the agreement. 169 A.3d at 709. In that case, the claimant and employer entered into a C&R Agreement which settled the indemnity portion of the case but required the employer to continue paying medical benefits related to an injury described as a right and left foot fracture. *Id.* at 706. Six years after the agreement was approved, the employer filed a utilization review petition challenging a utilization review determination that treatment the claimant was receiving for complex regional pain syndrome was related to the claimant's work injury because it was not expressly accepted in the C&R Agreement. *Id.* The claimant then filed a review petition alleging in part an incorrect description of the injury asserting that the pain condition, and treatment therefor, was related to the work injury. *Id.* Relying on *DePue*, we concluded that the claimant was barred from

8

seeking to expand or modify the description of the injury, as there was no allegation of fraud, deception, duress or mistake. *Id.* at 709.

In this matter, consistent with our holdings in *DePue* and *Haslam*, we conclude that to the extent that Claimant seeks through the Review Petition to expand, correct or modify the description of the injury stated in the C&R Agreement, he is barred from doing so. Claimant has not alleged or produced evidence to show that he was the victim of fraud, deception, duress, mutual mistake or unilateral mistake attributable to Employer with respect to the formation of the C&R Agreement. Furthermore, the C&R Agreement does not expressly reserve to Claimant the option of petitioning to supplement the description of the work injury in the agreement with a new injury.

Claimant's argument on appeal, however, does not solely rest on the premise that the description of the work injury should be expanded to include glenohumeral arthritis. Rather, relying on *Haslam*, Claimant asserts that the contested medical treatment he received beginning in April 2014 was causally related to his acknowledged work injury and fell within the scope of the treatment that Employer had agreed to pay for in the C&R Agreement. In *Haslam*, we held that, though the claimant was foreclosed from altering the description of the work injury following a C&R Agreement unless that right was expressly reserved in the agreement, he was not also barred from challenging the Board's determination that the medical treatment he received was beyond the scope of the medical benefits which the employer had agreed to pay for in the C&R Agreement. 169 A.3d at 709. We noted that in the C&R Agreement, the employer had agreed to "pay for all reasonable and necessary medical expenses *that are related to*" the acknowledged work-related injury of a fracture of both of the claimant's feet and therefore to the extent the treatment he received for his pain disorder was "*related to* [the c]laimant's

9

fractured feet" that was also compensable. *Id.* at 709-10 (emphasis in original). Furthermore, following our decision in *Kurtz*, because the connection between the pain in his feet bore an "obvious connection" to the fractures of his feet, we determined in *Haslam* that the claimant was entitled to a presumption that his new symptoms were related to his injury and therefore the burden fell on the employer to prove that his new symptoms were not related to the compensable injury. *Haslam*, 169 A.3d at 710-11. As the employer presented no medical evidence that demonstrated that the symptoms were not related to the injury, we overturned the Board's decision and reinstated the WCJ's determination that the treatment under review was for symptoms that were causally related to the work injury described in the C&R Agreement. *Id.* at 711.

The facts in this case are similar to those in *Haslam*; here, like in *Haslam*, Employer agreed in the C&R Agreement to continue paying for reasonable and necessary medical treatment "causally related to" his work injury and Claimant maintains that the treatment at issue was directly related to the acknowledged work injury. However, there are several key differences between this case and *Haslam*. First, in this case, Claimant's Review Petition solely alleged an incorrect description of the injury whereas in *Haslam* the claimant filed a petition to review medical treatment specifically alleging that the pain condition was related to the accepted injury. *See* 169 A.3d at 705-06. Similarly, in *Kurtz*, which did not involve a C&R Agreement but, like *Haslam*, concerned the question of whether a pain condition was causally related to the accepted work injury,[6] the claimant filed a petition to

_____

[6] In *Kurtz*, the claimant fell while at work suffering a grade two concussion with retrograde amnesia and severe paracervical spasms, and these injuries were accepted by the employer through a notice of compensation payable. 794 A.2d at 445. The claimant underwent surgery to resolve the pain and was able to return to work, but began experiencing dizziness, headaches and a burning

10

review medical treatment alleging that the later condition was causally related to the work injury. *See Kurtz*, 794 A.2d at 445-46. Therefore, it is not clear that Claimant properly presented the argument to the WCJ that the treatment at issue was causally related to the description of the work injury as set forth in the C&R Agreement.

Furthermore, unlike in *Haslam* the connection between the symptoms Claimant was experiencing in 2014 and his accepted work injury was not obvious. "An 'obvious' connection 'involves a nexus that is so clear that an untrained lay person would not have a problem in making the connection between' the new symptoms and the compensated injury; the new symptoms would be a 'natural and probable' result of that injury." *Kurtz*, 794 A.2d at 447-48 (quoting *Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784 (Pa. Cmwlth. 1991)); *see also Haslam*, 169 A.3d at 710. In *Haslam*, the claimant suffered an injury described in the C&R Agreement as a right and left foot fracture and the new symptoms that were determined to be obviously connected to the injury consisted of a pain condition in the same body parts. Here, rather than having a generalized description of an injury to a body part, the C&R Agreement does not describe a 'right shoulder injury' but instead details the specific parts of the right shoulder that were injured, e.g. "right shoulder rotator cuff tear with subacromial impingement," and procedures that were performed on the shoulder, e.g. "cleaning of the labrum and bone underlying the rotator cuff arthroscopically."

---

sensation in the area of the incision approximately one and a half years after the surgery for which he received treatment of a series of nerve block injections. *Id.* at 445-46. The employer refused to pay for the nerve block treatment, and the WCJ concluded that the claimant had not met his burden of proving that his new symptoms were causally related to the original injury, which ruling the Board affirmed. *Id.* at 446. We reversed, concluding that the pain in such close proximity and of a similar type to the original pain obviously appeared to be related to the original injury and that the evidence presented by the employer did not meet its burden of showing that the new symptoms were unrelated to that injury. *Id.* at 448-49.

(C&R Agreement ¶4, R.R. 5a.) Though the C&R Agreement specifically states that Claimant's work injury includes "acromioclavicular arthritis," the C&R Agreement does not state that Claimant suffered from arthritis to any other part of his right shoulder including glenohumeral arthritis. (*Id.*) Indeed, despite the comprehensive description of the various aspects of the shoulder injury there is no mention of an injury to or treatment of the glenohumeral joint at all. Further attenuating the connection between Claimant's work injury and the contested treatment is the fact that Claimant was involved in a car accident in October 2013 in which his right shoulder struck the steering wheel and he experienced pain and bruising as a result. (Oct. 22, 2015 Hearing Transcript at 7-8, R.R. 107a-08a.) In addition, Claimant fractured his right shoulder as a child. (June 9, 2016 Report of Dr. Armstrong, R.R. 18a.) While none of these factors would rule out that the treatment he began receiving in April 2014 for glenohumeral arthritis was causally connected to his May 19, 2008 work injury, viewed cumulatively they demonstrate that the nexus between the injury and 2014 treatment was not so obvious that Claimant was entitled to a presumption of their relatedness.

Because the connection between Claimant's work injury and the contested treatment was not obvious, Claimant was required to prove the connection through unequivocal medical testimony. *Kurtz*, 794 A.2d at 448. The WCJ found the opinion of Claimant's treating physician contained in her June 9, 2016 report that her treatment of Claimant for arthritis was related to his accepted work injury as not credible and persuasive for three reasons. (Nov. 23, 2016 WCJ Decision F.F. ¶17.) First, the WCJ found that Dr. Armstrong did not demonstrate knowledge of the detailed description of Claimant's work injury as set forth in the C&R Agreement. (*Id.*) Second, Dr. Armstrong stated only that Claimant had a general diagnosis of arthritis in her report, yet it was clear from the records associated with

the rejected medical bills that Dr. Armstrong was treating Claimant specifically for arthritis of the glenohumeral joint. (*Id.*) Finally, the WCJ found that Dr. Armstrong's credibility was undermined by the fact that her report merely stated Claimant's diagnosis and described the progression of his course of treatment but lacked a persuasive explanation of how his work injury or treatment caused his arthritis. (*Id.*)

In workers' compensation matters, the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and witness weight. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003). The findings of the WCJ are conclusive on appeal, so long as they are supported by substantial evidence. *O'Donnell v. Workers' Compensation Appeal Board (United Parcel Service)*, 831 A.2d 784, 789 (Pa. Cmwlth. 2003). The WCJ may accept or reject the testimony of any witness in whole or in part, including medical witnesses. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 70 (Pa. Cmwlth. 2014); *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23, 29 (Pa. Cmwlth. 2002). Unless made arbitrarily or capriciously, determinations of witness credibility and evidentiary weight are not subject to appellate review. *Furnari*, 90 A.3d at 70; *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.),* 962 A.2d 14, 19 (Pa. Cmwlth. 2008). The WCJ here offered a thorough explanation for why she rejected the opinion of Dr. Armstrong as not credible or persuasive. The WCJ's credibility determinations were supported by the evidence and were not arbitrary or capricious, and accordingly they may not be disturbed on appeal. Furthermore, because Claimant, rather than Employer, bore the burden of persuasion on the Review Petition, it is irrelevant whether, as Claimant contends, the opinion of Employer's expert was insufficient to support the denial of the Review Petition.

Accordingly, we affirm the WCJ's denial of the Review Petition. Furthermore, because Claimant did not prove that Employer violated the Act or its regulations, the WCJ also appropriately denied the Penalty Petition. *See Dixon v. Workers' Compensation Appeal Board (Medrad, Inc.)*, 134 A.3d 518, 525 (Pa. Cmwlth. 2016) ("a violation of the Act or its regulations must appear in the record for a penalty to be appropriate") (quoting *Gumm v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008)).

The order of the Board is affirmed.


_____
**JAMES GARDNER COLINS, Senior Judge**

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark L. Boatman,                          :
                                          :
                    Petitioner            :
                                          :
        v.                                : No. 1771 C.D. 2017
                                          :
Workers' Compensation Appeal              :
Board (Bortner Bros, Inc.),               :
                                          :
                    Respondent            :

## ORDER

AND NOW, this 3rd day of August, 2018, the order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**