# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UPMC Benefit Management Services,  :
Inc. d/b/a UPMC Work Partners,  :
          Petitioner  :
  :
  :
       v.  :
  :
United Pharmacy Services (Bureau  :
of Workers' Compensation Fee  :
Review Hearing Office),  :  No.  558 C.D. 2021
         Respondent  :  Argued:  June 22, 2022

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE FIZZANO CANNON       FILED:  December 15, 2022

        UPMC Benefit Management Services, d/b/a UPMC Work Partners (UPMC), petitions for review of the April 23, 2021 decision of the Bureau of Workers' Compensation (Bureau) Medical Fee Review Hearing Office (Hearing Office). The Hearing Office reversed the dismissal by the Health Care Services Review Division of the Bureau's Fee Review Section (Fee Review Section) of three fee review applications submitted by United Pharmacy Services (Pharmacy), as prematurely filed. Upon review, we affirm the Hearing Office's decision.

# I. Background

In October 2019, Lisa Cass (Claimant) sustained a work-related injury while in the employ of Pinnacle Health Medical Services (Employer). Hearing Off. Decision, 4/23/21 at 1, Finding of Fact (F.F.) 1, Reproduced Record (R.R.) at 52a. Claimant's injury was accepted by a medical-only notice of compensation payable (NCP) as "lower back area sprain/low back sprain from picking up a laptop bag." *Id.* In January 2020, Claimant was prescribed compound cream with instructions to apply one to three pumps to the affected area two to four times daily, as needed. F.F. 3. Between January and April 2020, Pharmacy issued three separate bills, each requesting payment of $2,249.98 for the compound cream dispensed to Claimant. F.F. 4-6. UPMC denied payment on the basis that the prescribed treatment was "not work related." F.F. 4-6.

Between March and June 2020, Pharmacy filed three applications for fee review pursuant to Section 306(f.1) of the Workers' Compensation Act (Act),[1] 77 P.S. § 531, disputing UPMC's failure to pay the bills. F.F. 1 & 7; *see also* Fee Review Applications, R.R. at 4a-5a, 13a-14a & 24a-25a. The Fee Review Section denied each of Pharmacy's fee review applications as prematurely filed on the basis that the issue of the "causal relatedness" of the prescribed compound cream to the work injury remained outstanding. F.F. 8. Pharmacy requested a hearing to contest the three fee review determinations, asserting that the applications were not premature because Claimant's injury was accepted by Employer, no party petitioned for utilization review, and UPMC's 30-day period in which to remit payment following receipt of the disputed bills had lapsed. F.F. 9-10 & 13.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

By decision circulated April 23, 2021, the Hearing Office reversed the determinations of the Fee Review Section and ordered UPMC to issue payment plus statutory interest to Pharmacy for the medications dispensed to Claimant. Hearing Off. Decision, 4/23/21 at 1 & 6-7, R.R. at 50a & 55a-56a. The Hearing Office reasoned that UPMC's denial of payment on the basis of lack of "causal relatedness" did not render Pharmacy's fee review application premature, because this "defense" in fact constituted a challenge to the reasonableness and necessity of Claimant's treatment, which UPMC should have disputed through the utilization review process. *See* Hearing Off. Decision, 4/23/21 at 6, R.R. at 55a (first citing *Workers' First Pharmacy Servs., LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Gallagher Bassett Servs.)*, 225 A.3d 613 (Pa. Cmwlth. 2020); and then citing *Omni Pharmacy Servs., LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 241 A.3d 1273, 1274 (Pa. Cmwlth. 2020), *reargument denied* (Dec. 18, 2020), *appeal denied sub nom. Omni Pharmacy Servs., LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Am. Interstate Ins. Co.)*, 257 A.3d 1212 (Pa. 2021)). Further, the Hearing Office concluded that *Crozer Chester Medical Center v. Department of Labor and Industry, Bureau of Workers' Compensation Health Care Services Review Division*, 22 A.3d 189 (Pa. 2011) (*Crozer Chester II*), was inapposite, as that case turned on whether the provider had alleged sufficient facts in support of its request for *mandamus* relief to compel issuance of a fee review determination. Hearing Off. Decision, 4/23/21 at 6, R.R. at 55a. The Hearing Office, therefore, determined that Pharmacy did not file the three fee review applications prematurely. *See id.* at 6, R.R. at 55a (citing Workers' Compensation (WC) Regul. 127.255, 34 Pa. Code § 127.255). The Hearing Office concluded that UPMC failed to meet its

3

burden of proving by a preponderance of the evidence that it properly reimbursed Pharmacy. *Id.* (citing WC Regul. 127.255(f); 34 Pa. Code § 127.259(f)).

UPMC petitioned this Court for review.[2]

## II. Issues

Before this Court,[3] UPMC argues that the Hearing Office erred in applying *Workers' First* and *Omni* to determine that Pharmacy's fee review applications were not prematurely filed where the dispute "turn[ed] solely on . . . liability for a particular medical treatment." UPMC's Br. at 21. UPMC contends that even where a claimant's injury is accepted by means of an open NCP, "the insurer may nonetheless question liability for a particular treatment." *Id.* at 21 (quoting *Crozer Chester II*, 22 A.3d at 195); *see also Crozer Chester II*, 22 A.3d at 197 (explaining that "liability for an injury is distinct from liability for a particular treatment or its cost. The NCP, even if 'open' and binding with respect to liability for the injury, is not dispositive as to the medical care provider's claim for reimbursement for the cost of a particular treatment."). Further, UPMC asserts that utilization review may not decide the causal relationship between the treatment under review and the employee's work-related injury. *See id.* at 14 (citing WC

---

[2] Simultaneously with the filing of its petition for review, UPMC filed an application for supersedeas, which this Court ultimately denied by order dated August 5, 2021. *See* Cmwlth. Ct. Order, 8/5/21.

[3] Our review in medical fee review cases determines whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact were supported by substantial evidence. *Workers' First Pharmacy Servs., LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Gallagher Bassett Servs.)*, 225 A.3d 613, 616 n.3 (Pa. Cmwlth. 2020). Regarding questions of law, our scope of review is plenary and our standard of review is *de novo*. *Id.*

Regul. 127.406(b)(1), 34 Pa. Code § 127.406(b)(1)).[4] UPMC maintains that "[i]n cases in which liability for a particular treatment is at issue, the claimant, not the medical provider, must pursue compensation before a workers' compensation judge in the regular course." *Id.* at 17 (quoting *Crozer Chester II*, 22 A.3d at 195 (first citing Section 306(f.1) of the Act, 77 P.S. § 531(6)(iv) (utilization review); and then Section 401.1 of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 710 (liability for compensation generally))). UPMC contends that our Supreme Court's decision in "*Crozer Chester* [*II*] supersedes this Court's analyses in both *Workers' First* [] and *Omni* pursuant to the doctrine of *stare decisis*." *Id.* at 19 (citing *Rodriguez v. Workers' Comp. Appeal Bd. (Adecco Grp. N. Am.)* (Pa. Cmwlth., No. 869 C.D. 2019, filed Jan. 6, 2021)). UPMC requests that this Court reverse the Hearing Office's April 23, 2021 decision and dismiss Pharmacy's three fee review applications. *Id.* at 2 & 23.

Pharmacy counters that an employer or insurer must use the utilization review process to dispute liability for treatment on the basis that it is unrelated to the work injury, because such a challenge constitutes a dispute regarding the reasonableness and necessity of that treatment. Pharmacy's Br. at 8-9 (first citing *Workers' First*; and then citing *Omni*). Pharmacy contends that this Court's

---

[4] WC Regulation 127.406(b)(1) states that "[utilization review organizations] may not decide . . . [t]he causal relationship between the treatment under review and the employe's work-related injury." 34 Pa. Code § 127.406(b)(1). Similarly, WC Regulation 127.470(b) provides that

> [utilization review r]eviewers shall assume the existence of a causal relationship between the treatment under review and the employe's work-related injury. Reviewers may not consider or decide issues such as whether the employe is still disabled, whether maximum medical improvement has been obtained, quality of care or the reasonableness of fees.

34 Pa. Code § 127.470(b).

clarification of the law in *Workers' First* and *Omni* has the beneficial effect of preventing an employer or insurer from defeating a fee review petition merely by asserting that billed treatment or service was not causally related to the work injury. *Id.* at 12. Further, Pharmacy asserts that deeming its fee review applications premature on the basis of UPMC's asserted "defense" of lack of "causal relation" denies Pharmacy due process by depriving it and other providers of recourse for nonpayment. *Id.* at 15 & 18-19. Pharmacy echoes the Hearing Office in distinguishing *Crozer Chester II* as involving the narrow question of whether a hospital alleged sufficient facts to support its petition for review in *mandamus* seeking to compel the Pennsylvania Department of Labor and Industry (Department) to reach the merits of its fee review application. *Id.* at 20 (citing *Crozer Chester II*, 22 A.3d at 191).

After the parties presented their arguments during this Court's October 2021 *en banc* session, we ordered supplemental briefing to address the potential impact of the Pennsylvania Supreme Court's recent decision in *Keystone Rx LLC v. Bureau of Workers' Compensation Fee Review Hearing Off. (Compservices Inc./AmeriHealth Casualty Services)*, 265 A.3d 322 (Pa. 2021), on their respective positions. *See* Cmwlth. Ct. Order, 12/27/21. Specifically, this Court instructed the parties to address whether a fee review petition may be dismissed as premature based on a causal relationship challenge where (1) the work injury is accepted, (2) no utilization review petition has been filed, and (3) payment has not been made within the statutory period. *Id.*; *see also* 34 Pa. Code § 127.255.

The parties submitted supplemental briefs and argued their positions before this Court's June 2022 *en banc* panel. UPMC contended that deeming Pharmacy's fee review applications premature on the basis of a "causal relatedness"

6

denial would not infringe upon Pharmacy's due process rights because, under *Keystone Rx*, a non-treating provider does not have a constitutionally protected interest in goods or services where it is not entitled to payment under the Act. UPMC's Suppl. Br. at 13 & 16. Pharmacy countered that the Pennsylvania Supreme Court's holding in *Keystone Rx* that non-treating providers were not entitled to notice and an opportunity to intervene in utilization review proceedings does not bear upon whether Pharmacy prematurely filed the disputed fee review applications. *See* Pharmacy's Suppl. Br. at 4-5. Further, Pharmacy noted that, unlike the insurer in *Keystone Rx*, UPMC did not request a utilization review here. *Id.*

We agree with Pharmacy that *Keystone Rx* does not preclude affirmance of the Hearing Office's April 23, 2021 decision. That Pharmacy would be unable to intervene in any utilization review proceedings initiated by UPMC does not alter the preclusive effect those proceedings would have had on Pharmacy's fee review applications.

## III. Discussion

Section 306(f.1) of the Act provides, in relevant part:

(5) The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this [A]ct shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be made timely for any treatment or portion thereof not in dispute. A provider who has submitted the reports and bills required by this section and who disputes the amount or

7

timeliness of the payment from the employer or insurer shall file an application for fee review with the [D]epartment no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment. If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6) [delineating the utilization review process], the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of the filing of such an application, the [D]epartment shall render an administrative decision.

(6) Except in those cases in which a workers' compensation judge asks for an opinion from peer review under [S]ection 420 [of the Act, 77 P.S. §§ 831, 832], disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The [D]epartment shall authorize utilization review organizations to perform utilization review under this [A]ct. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review.

77 P.S. § 531(5), (6)(i).

Pursuant to WC Regulation 127.255, "[t]he Bureau [of Workers' Compensation] will return applications for fee review prematurely filed by providers when one of the following exists":

(1) The insurer denies liability for the alleged work injury.

8

(2) The insurer has filed a request for utilization review of the treatment under Subchapter C (relating to medical treatment review).

(3) The 30-day period allowed for payment has not yet elapsed . . . .

34 Pa. Code § 127.255.

In *Workers' First*, this Court reasoned:

Had [the e]mployer sought utilization review, its 30-day deadline to pay [the p]harmacy's invoice would have been stayed. [A c]laimant may be under treatment for an array of medical problems, only some of which relate to the work injury. It is for the [u]tilization [r]eview [o]rganization to sort this out. If the compound cream was prescribed for a non-work-related injury of [c]laimant, *a fortiori* it is not reasonable or necessary for treatment of her accepted work injury. [The e]mployer's stated reason for denying [the p]harmacy's invoice was that the "diagnosis is inconsistent with the procedure." . . . *This is just another way of stating that the compound cream was not a reasonable or necessary "procedure" for treating* [the c]*laimant's "diagnosis," i.e., a shoulder sprain.*

An application for fee review is deemed premature in three circumstances: (1) where the insurer denies liability for the alleged work injury; (2) where the insurer has filed a request for utilization review; or (3) where the 30-day period insurer is allowed for payment of a provider's invoice has not yet elapsed. 34 Pa. Code § 127.255. Here, the Hearing Office concluded that [the p]harmacy's fee review was premature because [*the e*]*mployer denied that the compound cream was related to* [*the c*]*laimant's accepted work injury.* The Hearing Office erred because [the e]mployer's non[]payment did not fit any of the exceptions to the rule that an employer must pay an invoice within 30 days. *See* 34 Pa. Code § 127.255. [The e]mployer did not file a modification petition to revise [the c]laimant's accepted work injury

and did not seek utilization review. [The e]mployer expressly accepted liability for [the c]laimant's work injury in the nature of a right shoulder strain both in the [notice of temporary compensation payable] and in the [compromise and release a]greement.

[The e]mployer contends that the compound cream was not related to the accepted work injury, *i.e.*, a shoulder sprain. It argues that its liability for this treatment must be established in a claim petition proceeding. We disagree. The work injury has been accepted, and the sole question is whether the compound cream was reasonable and necessary for treatment of the accepted work injury. *This is an issue for utilization review*.

We hold that [*the e*]*mployer was obligated to seek utilization review* upon receipt of [the p]harmacy's invoice.

*Workers' First*, 225 A.3d at 620-21 (emphasis added) (footnotes omitted).

Similarly, this Court has explained:

An employer is obligated to pay for reasonable medical expenses that are causally related to the work injury. *Listino v. Workmen's Comp*[.] *Appeal* [*Bd.*] *(INA Life Ins*[.] *Co*[.]*)*, 659 A.2d 45, 47 (Pa. Cmwlth. 1995). Under Section 306(f.1)(5) of the Act, 77 P.S. § 531(5), the employer must pay the claimant's medical bills within 30 days of receiving them, unless the employer disputes the reasonableness and necessity of the treatment. If the employer believes that the treatment is not reasonable and necessary, it must submit the bills for a utilization review or face the possibility of a penalty. *Hough v. Workers' Comp*[.] *Appeal* [*Bd.*] *(AC & T* [*Cos.*]*)*, 928 A.2d 1173, 1180 (Pa. Cmwlth. 2007). In addition, if the employer refuses to pay bills because it believes they are not causally related to the work injury, the employer runs the risk of being assessed a penalty if the [workers' compensation judge] determines that they are, in fact, causally related. *Listino*, 659 A.2d at 48.

10

*CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1227 (Pa. Cmwlth. 2011) (footnote omitted).

Likewise, in *Omni*, we held that in denying payment to a pharmacy for treatment on the basis of the "issue of causation" between the claimant's work injury and the prescribed compound cream, the "[e]mployer [was] challenging whether the compound cream prescribed to [the c]laimant constituted reasonable and necessary treatment for the accepted work injury," a question reserved for the utilization review process. *Omni*, 241 A.3d at 1275 & 1278 (citing *Workers' First*, 225 A.3d at 621).[5]

None of the three prerequisites for deeming a fee review application premature has been met here. *See id.* UPMC issued a medical-only NCP accepting liability for Claimant's work-related injury. *See* F.F. 1. UPMC thereafter denied payment for the cost of the prescribed compound cream on the basis that the treatment was not causally related to Claimant's work injury. *See* F.F. 4-6; Hearing Off. Decision, 4/23/21 at 3 n.3, R.R. at 52a. As noted by UPMC, accepting liability for a work-related injury by means of an NCP does not preclude an insurer's ability to question liability for a particular treatment. *See Crozer Chester II*, 22 A.3d at 195 (citing Section 306(f.1)(5) of the Act, 77 P.S. § 531(5)). Either an employer or its insurer may file a petition for medical review of treatment contesting the causal relatedness of the prescribed treatment to the underlying work injury. *See CVA, Inc.*,

---

[5] We clarify that *Workers' First* and *Omni* do not stand for the proposition that liability for a claimant's prescribed treatment may only be disputed through the utilization review process. Rather, the import of *Workers' First* and *Omni* is that *where an employer or insurer also seeks to render a provider's fee review application premature*, a dispute regarding the causal connection between the prescribed treatment and the underlying work injury must be reframed as a challenge to the reasonableness and necessity of the treatment through the utilization review process. *See Omni*, 241 A.3d at 1275 & 1278 (citing *Workers' First*, 225 A.3d at 621) (additional citations omitted).

11

29 A.3d at 1229; *see also Ralph Martin Constr. v. Castaneda-Escobar (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 341 C.D. 2021, filed Aug. 1, 2022), slip op. at 1 & 3. In the alternative, either an employer or its insurer may petition for utilization review of the reasonableness or necessity of a prescribed treatment. *See* Section 306(f.1)(6) of the Act, 77 P.S. § 531(6).

However, neither Employer nor UPMC pursued either means of recourse in the instant matter. UPMC merely denied payment on the basis that the prescribed compound cream was not causally related to Claimant's work injury. *See* F.F. 4-6. This inaction does not satisfy any of the three specific prerequisites for rendering a fee review application premature under WC Regulation 127.255, 34 Pa. Code § 127.255. "An employer who unilaterally ceases payment of a claimant's medical bills based solely on causation assumes the risk that it will be subject to penalties, contingent upon a [workers' compensation judge's] ruling concerning the causal relation of the medical costs." *Roadway Exp., Inc. v. Workers' Comp. Appeal Bd. (Iwasko)*, 723 A.2d 1076, 1079 (Pa. Cmwlth. 1999).

Accordingly, we conclude that UPMC was obligated to dispute liability for Claimant's treatment through the utilization review process in order to render Pharmacy's fee review applications premature. UPMC's "defense" that the treatment was not causally related to Claimant's work injury was "just another way of stating that the compound cream was not a reasonable or necessary 'procedure' for treating Claimant's 'diagnosis[.]'" *Workers' First*, 225 A.3d at 620-21; *see also Omni*, 241 A.3d at 1275 & 1278.

Relying on *Crozer Chester II*, UPMC maintains that "[i]n cases in which liability for a particular treatment is at issue, the claimant, not the medical provider, must pursue compensation before a workers' compensation judge in the

12

regular course." UPMC's Br. at 17 (quoting *Crozer Chester II*, 22 A.3d at 195 (citing Section 306(f.1)(6)(iv) of the Act, 77 P.S. § 531(6)(iv) (utilization review); Section 401.1 of the Act, 77 P.S. § 710 (liability for compensation generally)). Thus, according to UPMC, Claimant bore the burden of establishing UPMC's liability for the prescribed treatment before a workers' compensation judge following UPMC's issuance of its "causal relatedness" denial.

However, *Crozer Chester II* is inapposite. The portion of *Crozer Chester II* cited by UPMC merely explains that providers may not be parties to a utilization review dispute between the claimant and employer and, in practice, the claimant brings the utilization review petition on the provider's behalf. *See Crozer Chester II*, 22 A.3d at 195 (citing Section 306(f.1)(6)(iv) of the Act, 77 P.S. § 531(6)(iv)). Further, a claimant does not bear an ongoing obligation to establish the causal connection between each subsequently prescribed treatment and the accepted work injury after an employer's liability for the work injury is established. *See Gens v. Workmen's Comp. Appeal Bd. (Rehab. Hosp. of Mechanicsburg/AETNA Life & Cas.)*, 631 A.2d 804, 805-06 (Pa. Cmwlth. 1993).[6] Notably, if UPMC had petitioned for utilization review, UPMC would have retained the burden throughout that process of proving that the challenged medical treatment was unreasonable or unnecessary. *See Topps Chewing Gum v. Workers' Comp. Appeal Bd. (Wickizer)*, 710 A.2d 1256, 1260-61 (Pa. Cmwlth. 1998).

---

[6] Even when a claimant receives medical treatment for new symptoms arising from a compensable work injury, where the connection between those symptoms and the work injury is obvious, the employer retains the burden of establishing that the new symptoms and corresponding treatment are not causally related to the work injury. *See Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002). However, when this connection is not obvious, the claimant bears the burden. *Id.* at 448. Here, neither Employer nor UPMC alleges that the disputed medication was prescribed to treat new symptoms that were not obviously related to Claimant's work injury.

In *Crozer Chester II*, the employer issued a medical-only NCP voluntarily accepting liability for a claimant's work injury in the form of an umbilical hernia. *Crozer Chester Med. Ctr. v. Dep't of Lab. and Indus. Bureau of Workers' Comp. Health Care Servs. Rev. Div.*, 955 A.2d 1037, 1038 (Pa. Cmwlth. 2008) (*Crozer Chester I*), *aff'd Crozer Chester II*. The claimant underwent surgery to repair the hernia, but the insurer neither paid the billed cost of the surgery nor issued a written denial of liability for payment.[7] *Id.* The provider performing the surgery filed an application for fee review, which was denied as premature on the basis of "an outstanding issue of liability/compensability of the alleged injury." *Id.* Following denial of its request for a *de novo* administrative fee review hearing, the provider filed a petition for review in *mandamus* with this Court, seeking to compel the Hearing Office to consider the merits of its fee review application. *Id.* The Commonwealth Court denied the *mandamus* petition on the basis that the provider was "not attempting to enforce a right which has been established beyond peradventure, but [was] seeking to have [the] Court direct the Department to determine the issue of liability in [the provider's] favor." *Id.* at 1042-43. In *Crozer Chester II*, our Supreme Court affirmed, holding that the provider

> did not have a clear right to a decision of its fee review application on the merits because: (1) [it] alleged that [the insurer] disputed liability by refusing payment; and (2) [the provider] challenged the propriety of [the insurer's] denial rather than the amount or timeliness of payment for a particular treatment.

*Crozer Chester II*, 22 A.3d at 199. The *Crozer Chester II* Court reasoned:

---

[7] "If payment of a bill is denied entirely, insurers shall provide a written explanation for the denial." WC Regul. 127.209(a), 34 Pa. Code § 127.209(a).

14

> [I]t is apparent from [the provider's] *mandamus* petition that the present dispute is not capable of resolution through the Section 306(f.1)(5) fee review process. Fee review is a process for medical care providers to dispute "the amount or timeliness" of an insurer's payment for a particular treatment, which are relatively simple matters. 77 P.S. § 531(5). But, [the provider's] petition contains no allegations that the medical fee had not been paid timely or had not been calculated in accordance with the compensation fee schedule or medical billing protocols. *See* 34 Pa. Code §§ 127.208, 127.210 (timeliness provisions); 127.101-127.135, 127.151-127.162, 127.205-127.207 (amount calculation provisions). [The provider] is seeking, instead, to establish the broader legal proposition that [insurer's] failure to pay was unwarranted and that the Department's fee review personnel were obliged to make that determination. Such a decision is outside the scope of what is designed to be a simple fee review process.

*Id.* at 197 (footnote omitted); *see also Crozer Chester I*, 955 A.2d at 1042 (holding that provider "fail[ed] to plead a legally cognizable claim in *mandamus*," where provider "[was] not attempting to enforce a right which has been established beyond peradventure, but [was] seeking to have this Court direct the Department to determine the issue of liability in [provider's] favor"). By contrast, here, the issue is whether UPMC's "causal relatedness" denial rendered Pharmacy's fee review application premature under WC Regulation 127.255, 34 Pa. Code § 127.255, not whether either party impermissibly sought to compel the exercise of the fee review office's discretion.

Further, in *Crozer Chester II*, the provider argued in its *mandamus* petition that this Court should compel the Department to consider the merits of its fee review application on the basis that the employer's "open" NCP constituted an unequivocal admission of liability for the claimant's injury. *See Crozer Chester II*,

15

22 A.3d at 192. Here, however, the issue is whether UPMC's "causal relatedness" denial—not the parties' NCP—rendered Pharmacy's fee review applications premature. *See id.* at 197 (citing *Cath. Health Initiatives v. Heath Fam. Chiropractic*, 720 A.2d 509, 511 (Pa. Cmwlth. 1998); WC Regul. 127.255, 34 Pa. Code § 127.255) (holding that an "'open' NCP simply cannot be construed as compelling a fee review on the merits if an insurer, rightly or wrongly, refuse[s] payment").

We acknowledge that, in a footnote in *Crozer Chester II*, the Pennsylvania Supreme Court suggested that WC Regulation 127.255(1), 34 Pa. Code § 127.255(1), might be susceptible to a reading that would allow disputes regarding liability for the prescribed treatment, in addition to denials of liability for the alleged work injury, to serve as bases for deeming fee applications prematurely filed. *See Crozer Chester II*, 22 A.3d at 194 n.5. The Supreme Court observed:

> We recognize that the language of Regulation 127.255(1) [regarding when a fee review application shall be deemed prematurely filed] appears to contain a latent ambiguity insofar as it refers to the insurer denying "liability for the alleged work injury." *See* 34 Pa. Code § 127.255. Indeed, Section 306(f.1)(5) of the Act, which the regulation addresses, indicates that it is sufficient if the insurer denies liability for a "particular treatment," as explained further *infra*. *See* 77 P.S. § 531(5); [Section 435 of the Act, added by the Act of February 8, 1972, P.L. 25,] 77 P.S. § 991(a)(v) (Department to promulgate regulations "reasonably calculated to . . . explain and enforce the provisions of th[e] [A]ct"). In this case, the Department is interpreting the Regulation consistently with the Act, as required, and there is no issue before us regarding the overall validity of Regulation 127.255(1) in light of the latent ambiguity. *See* 77 P.S. § 991(a) (Department to promulgate regulations "consistent with th[e] [A]ct").

16

*Crozer Chester II*, 22 A.3d at 194 n.5.

However, that footnote does not govern this dispute. We construe the Court's reference to a "latent ambiguity" between subsections (1) and (2) of WC Regulation 127.255, 34 Pa. Code § 127.255, as pertaining to circumstances where, for instance, an employer has denied liability for the injury early on and although that denial may be the subject of claim petition litigation, the employer is not yet responsible for medical bills. Thus, an employer or insurer would be denying liability for both the work injury and any billed treatment pending resolution of the claim petition, apparently implicating both subsections (1) and (2) of the above-cited regulation to render fee review premature.[8] *See id.*; *Armour Pharmacy v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Wegman's Food Mkts., Inc.)*, 206 A.3d 660, 665-66 (Pa. Cmwlth. 2019) (stating that "an employer's liability for a claimant's work injury must be established before the fee review provisions can come into play").

Moreover, as footnote 5 of *Crozer Chester II* points out, Section 306(f.1)(5) specifically provides that an insurer's dispute regarding a "particular treatment" may *suspend the 30-day payment period*. *See* Section 306(f.1)(5) of the Act, 77 P.S. § 531(5). Critically, this portion of Section 306(f.1)(5) does not pertain to instances where the employer has denied liability for the injury. It governs challenges raised through the utilization review process, which can only arise after the employer has accepted liability for the underlying injury. *See id.* (providing that employer or insurer shall make payment for treatment provided pursuant to the Act "*unless the employer or insurer disputes the reasonableness or necessity of the treatment provided [through the utilization review process] pursuant to paragraph*

---

[8] In that instance, the medical provider assumes the risk that the claimant's claim petition may be unsuccessful and the provider may not be paid for treatment.

17

*(6)*") (emphasis added). Expanding WC Regulation 127.255(1) by incorporating utilization review provisions (the subject of subsection 2) would render meaningless any distinction between subsection (1) (denial of liability for alleged work injury) and subsection (2) (treatment disputed through utilization review), as both bases for deeming a fee application premature would then include denials of liability for treatment pursued through the utilization review process.[9]

Accordingly, we conclude that none of the conditions in WC Regulation 127.255 have been met. Therefore, the Hearing Office correctly determined that Pharmacy's fee review petitions were not premature, and we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[9] We further note that footnote 5 of *Crozer Chester II* constitutes non-binding *dictum. See In re L.J.*, 79 A.3d 1073, 1081 (Pa. 2013) (holding that a footnote in a separate case constituted "non-binding *dict[um]*" to which "*stare decisis* did not apply," where "the passage was not necessary to the outcome of the case" and "the majority . . . simply volunteered the discussion" when "the issue was not litigated by the parties"). Moreover, the "latent ambiguity" referenced by the Court in that footnote is not of concern here as UPMC issued an NCP that remains open, thereby foreclosing its ability to render fee review premature by means of WC Regulation 127.255(1), 34 Pa. Code § 127.255(1), absent some further action by Employer to rescind, amend, or terminate the NCP. *See Mahon v. Workers' Comp. Appeal Bd. (Expert Window Cleaning & State Workers' Ins. Fund)*, 835 A.2d 420, 426 (Pa. Cmwlth. 2003); *Beissel v. Workmen's Comp. Appeal Bd. (John Wanamaker, Inc.)*, 465 A.2d 969, 971-72 (1983). Thus, subsection (2) of WC Regulation 127.255 constituted UPMC's sole means of temporarily forestalling the fee review process. *See* 34 Pa. Code § 127.255(2).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UPMC Benefit Management Services, :
Inc. d/b/a UPMC Work Partners, :
                Petitioner :
                 :
         v. :
                 :
United Pharmacy Services (Bureau :
of Workers' Compensation Fee :
Review Hearing Office), :   No. 558 C.D. 2021
             Respondent :

O R D E R

AND NOW, this 15th day of December, 2022, the April 23, 2021 decision of the Bureau of Workers' Compensation Fee Review Hearing Office is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UPMC Benefit Management Services,  :
Inc. d/b/a UPMC Work Partners,  :
                           Petitioner  :
                                    :
                v.            :    No. 558 C.D. 2021
                                    :    Argued:  June 22, 2022
United Pharmacy Services (Bureau  :
of Workers' Compensation Fee  :
Review Hearing Office),  :
                        Respondent  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE LORI A. DUMAS, Judge

DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: December 15, 2022

The Workers' Compensation Act[1] (Act) establishes three distinct "tracks" for litigating issues related to the payment of medical treatment and services that arise under its provisions:  (1) the fee review process, whereby relatively simple questions regarding the timing and amount of medical payments are resolved by administrative staff; (2) the Utilization Review (UR) process, whereby more complicated questions regarding the medical reasonableness and necessity of a causally-related medical treatment or service are resolved by medical providers within the medical specialty of the prescribing medical provider; and (3) the petition process, whereby the most complicated and disputed issues, including questions of liability and causal relatedness, are resolved by specialized Workers' Compensation Judges (WCJs). *See Crozer Chester Med. Ctr. v. Dep't of Lab. & Indus., Bureau of Workers' Comp.,*

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

*Health Care Servs. Rev. Div.*, 22 A.3d 189, 195-98 (Pa. 2011) (*Crozer Chester II*[2]) (describing the various tracks of litigation under the Act).

In *Workers' First Pharmacy Services, LLC v. Bureau of Workers' Compensation Fee Review Hearing Office*, 225 A.3d 613 (Pa. Cmwlth. 2020) (*Workers' First*), this Court, surmising there was a gap in the Act's procedures, altered the boundaries of these tracks and established a procedure that is not supported by the plain language of Section 306(f.1) of the Act, 77 P.S. § 531, the Bureau of Workers' Compensation's (Bureau) Regulations (Regulations), or precedent. The Court then reiterated *Workers' First*'s holding in *Omni Pharmacy Services, LLC v. Bureau of Workers' Compensation Fee Review Hearing Office*, 241 A.3d 1273 (Pa. Cmwlth. 2020) (*Omni Pharmacy*). The Majority relies on *Workers' First* and *Omni Pharmacy* to affirm the decision of the Bureau of Workers' Compensation Medical Fee Review Hearing Office (Hearing Office) in this matter. *UPMC Benefit Mgmt. Servs., Inc. d/b/a UPMC Work Partners v. United Pharmacy Servs. (Bureau of Workers' Comp. Fee Rev. Hearing Off.) (UPMC Benefit Mgmt. Servs.)*, __ A.3d __, __ (Pa. Cmwlth., No. 558 C.D. 2021, filed December 15, 2022), slip op. at 9-12. Because I do not believe that it is for this Court to add language or requirements to the Act that the General Assembly did not include, I must, respectfully, dissent.

The matter presently before the Court involves the Fee Review Applications of United Pharmacy Services (Pharmacy) that UPMC Benefit Management Services, Inc. d/b/a UPMC Work Partners (UPMC), denied as not being related to the work-related injury. A Bureau Fee Review Hearing Officer found the Fee Review

---

[2] *Crozer Chester II* affirmed a single-judge opinion of this Court in *Crozer Chester Medical Center v. Department of Labor and Industry, Bureau of Workers' Compensation, Health Care Services Review Division*, 955 A.2d 1037 (Pa. Cmwlth. 2008).

Applications were not premature, pursuant to *Workers' First* and *Omni Pharmacy*, because UPMC did not challenge payment for the treatment via the UR process. The Majority affirms this determination. However, because neither Section 306(f.1), the Regulations, nor precedent support the conclusion that the UR process was **intended** to address **causation-based** challenges, Pharmacy's Fee Review Applications were properly dismissed as premature in the first instance pursuant to Section 127.255(1) of the Regulations, 34 Pa. Code § 127.255(1).

Judicial decisions must be tethered to and consistent with the statutory provisions governing the issue before the Court, as the goal is to ascertain and effectuate the intent of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *Commonwealth v. Walter*, 93 A.3d 442, 450 (Pa. 2014). At issue here, as it was in *Workers' First* and *Omni Pharmacy*, is Section 306(f.1)(5) and (6) of the Act. Section 306(f.1)(5) and (6) expressly establishes two of the aforementioned tracks of litigation relevant to the payment of a claimant's medical bills: (1) the fee review process, whereby the provider can challenge the amount and/or timeliness of an insurer's payment; and (2) the UR process, whereby an employer or insurer can challenge the reasonableness and necessity of a particular treatment.[3] Section 306(f.1)(5) and (6) provides, in pertinent part, as follows:

> (5) The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. **All payments to providers** for treatment provided pursuant to this act **shall be made within thirty (30) days** of receipt of such bills and records **unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6)**. . . . . A **provider** who has submitted the reports and

---

[3] Claimants may also seek UR of a particular treatment, but health care providers may not file UR requests. *See* 34 Pa. Code § 127.451.

bills required by this section and **who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review** with the [D]epartment [of Labor and Industry (Department)] no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment. **If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled** as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. . . . .

(6) Except in those cases in which a [WCJ] asks for an opinion from peer review under [S]ection 420 [of the Act], [77 P.S. §§ 831, 832,] **disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions**:

> (i) The **reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective [UR]** at the request of an employe, employer or insurer. . . . . U[R] of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. . . .

. . . .

77 P.S. § 531(5)-(6)(i) (emphasis added).

The Regulations provide additional guidance on these two tracks of litigation. Per those Regulations, if a provider files a fee review application that challenges the timeliness or amount of a payment, such application **will be returned** as "premature" if: "(1) [t]he insurer denies liability for the alleged work injury"; or "(2) [t]he insurer has filed a request for [UR] of the treatment . . . ."; or "(3) [t]he 30-day period allowed for payment has not yet elapsed . . . ." 34 Pa. Code § 127.255. Our Supreme Court has interpreted subsection (1) to include disputes of liability not only for the work injury itself but also liability for "a 'particular treatment'" being

provided for an established work injury. *Crozer Chester II*, 22 A.3d at 194 n.5 (quoting 77 P.S. § 531(5)). Such challenges can include, as here, that "the billed treatment **is not related** to the accepted work-related injury . . . ." *Id*. at 195 (emphasis added). Thus, per this Regulation, as interpreted by our Supreme Court, if an insurer disputes liability for a particular treatment, a fee review application should be returned as premature and **the question of liability must be resolved elsewhere**. This was the basis upon which Pharmacy's Fee Review Applications were initially rejected as being premature – a denial of liability because the billed treatment was not related to the accepted work injury.

A second reason for returning a fee review application as premature is if an insurer questions whether the particular treatment is reasonable and necessary for the work injury by filing for UR as provided for by Section 306(f.1)(5) and (6). The Regulations impose limits on what may be considered in the UR – specifically, UR Organizations (UROs) are **prohibited** from deciding, among other issues, "[t]he causal relationship between the treatment under review and the employe's work-related injury." 34 Pa. Code § 127.406(b)(1). Indeed, it is the duty of a reviewer to "**assume** the existence of a **causal relationship** between the treatment under review and the employe's work-related injury." 34 Pa. Code § 127.470(b) (emphasis added). Thus, the UR process focuses only on the medical reasonableness and necessity of the billed treatment, which is presumed to be causally related to the work injury.

Neither Section 306(f.1) nor the Regulations **contain any language authorizing** the consideration and resolution of **causation-based challenges or denials of payment** within the fee review or UR processes. The fee review process is expressly limited to reviewing the amount and timeliness of payments and has a

"very narrow scope within the broader legislative and regulatory scheme of compensating claimants for work-related injuries." *Crozer Chester II*, 22 A.3d at 196. The UR process is similarly limited in its scope to determining whether the treatment in question is medically reasonable and necessary for the work injury and **assumes** that **a causal connection exists** between the treatment and the work injury. After reviewing these processes, as well as the third track, the petition process, the Supreme Court has observed that "the General Assembly directed that **most disputed compensation issues be litigated between claimants and insurers before skilled [WCJs] in the first instance**." *Id.* (emphasis added). Accordingly, disputed compensation issues, such as denials of liability based on lack of causation, should be asserted through the third track of litigation, the petition process, in which specialized WCJs resolve those issues in litigation between claimants and insurers. *Id.* The procedure set forth in *Workers' First* is not consistent with these established processes and is based on a misinterpretation of *Crozer Chester II*.

While *Workers' First* quoted the above statutory and regulatory language and acknowledged the limited scope of the fee review and UR processes, its ultimate decision, that **causation-based challenges** where there is an accepted injury **must be raised** through **the UR process** and the failure to do so **precludes dismissal** of a provider's **fee review application as premature**, 225 A.3d at 620-21, is not tethered to or consistent with that language or those limitations. The Court addressed a denial of payment in *Workers' First* that was based on a lack of causation. *Workers' First* nonetheless held that this issue was "for the [URO] to sort [] out," reasoning that "[i]f the compound cream was prescribed for a non-work-related injury of [the c]laimant, *a fortiori* it is not reasonable or necessary for treatment of [the] accepted work injury." *Id.* Faced with what appeared to be a causation challenge that would

preclude UR, the Court recharacterized the denial as being "**just another way** of stating that the compound cream was not a reasonable or necessary 'procedure' for treating [the c]laimant's 'diagnosis.'" *Id.* at 621 (emphasis added). The Majority attempts to "clarify" that *Workers' First* does not hold that a liability-based challenge can be made only through the UR process, but, in cases where an insurer argues that a fee review application is premature, the "dispute regarding the causal connection between the prescribed treatment and the underlying work injury **must be reframed** as a challenge to the reasonableness and necessity of the treatment through the [UR] process." *UPMC Benefit Mgmt. Servs.*, __ A.3d at __ n.5, slip op. at 11 n.5 (emphasis added). However, the emphasized statements in *Workers' First* and the Majority conflate two concepts: whether a treatment is causally connected to an accepted work injury is not the same issue as whether a prescribed treatment is reasonable and necessary for the accepted work injury. Indeed, *Workers' First*'s holding has been criticized in legal commentary because "[l]ack of causation is not equivalent to lack of reasonableness and necessity." David B. Torrey & Andrew E. Greenburg, 7 West's Pa. Prac., Workers' Comp. § 9:91.50 (2020).

*Workers' First* relied on the Supreme Court's observation in *Crozer Chester II* that an employer questioning liability for a particular treatment can file a modification petition to change the scope of the accepted work injury or seek UR of the treatment. *Workers' First*, 225 A.3d at 620 (citing *Crozer Chester II*, 22 A.3d at 195). In relying on that observation to support its conclusion, *Workers' First* treats these alternatives as interchangeable, which they are not. In *Crozer Chester II*, the Supreme Court treated modification petitions and UR requests as **distinct** challenges with **different** procedures for resolving the **different** issues raised. Challenges to the reasonableness and necessity of a treatment for the accepted work injury are to

be raised in the UR process, while assertions that the treatment is not related to, or causally connected to, the accepted work injury **are to be raised "within the context of claimant-insurer litigation**." *Crozer Chester II*, 22 A.3d at 195-98 (emphasis added). Notably, under the Act, a claimant bears the burden to prove treatment is causally related to a work injury before an employer is responsible for that treatment.[4] Causation-based denials should thus be "properly viewed as the province of specially qualified [WCJs]." *Id.* at 198. However, because causation is presumed in the UR process, that process is ill-suited to resolve disputes where causation is the issue. Respectfully, *Workers' First* turns the process on its head by directing UROs to resolve an issue that they are, under the Regulations, prohibited from addressing under the guise of "refram[ing]" the issue. *UPMC Benefit Mgmt. Servs.*, __ A.3d at __ n.5, slip op. at 11 n.5. *Workers' First* thus places causation-based challenges to liability within the ambit of the UR process, without statutory, regulatory, or precedential support.[5] Respectfully, *Omni Pharmacy*, which applied *Workers' First* to similar facts, merely perpetuates this error, as does the Majority.

---

[4] The Majority asserts that Claimant may not have borne the burden of proving the causal relationship between the treatment and accepted work injury, citing *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443 (Pa. Cmwlth. 2002), because UPMC has not alleged that the disputed treatment was prescribed to treat new symptoms that were not obviously related to the work injury. *UPMC Benefit Mgmt. Servs.*, __ A.3d at __ n.6, slip op. at 13 n.6. However, this does not appear to be a situation where a claimant had been treating the injury and developed **new** symptoms, obvious or not, for which new treatment was prescribed. Claimant was injured on October 21, 2019, the prescription was written three months later, on January 22, 2020, and it was the first three bills for the prescribed medication that were denied as not being related to the work injury. Notably, while the prescription states to apply the medicine "to [the] affected area two-four (2-4) time daily as needed," it does not describe what the "affected area" is. (Reproduced Record at 9a.) Thus, I am not persuaded that the burden had shifted in this matter.

[5] It appears that *Workers' First* may have been decided, in part, based on the egregious facts therein, where the actions of the claimant and the employer, by settling the underlying workers' compensation claim without agreeing to whether the treatment was related to the work injury, left the provider in that case with no options to protect its interests. 225 A.3d at 615.

The Majority holds that *Crozer Chester II* is inapposite because "[t]he portion of *Crozer Chester II* cited by UPMC merely explains that providers may not be parties to a [UR] dispute between the claimant and employer and, in practice, the claimant brings the [UR] petition on the provider's behalf." *UPMC Benefit Mgmt. Servs.*, __ A.3d at __, slip op. at 13. Although the Majority reads the Supreme Court's language as merely explanatory and appears to agree with Pharmacy that *Crozer Chester II* should be read narrowly because it involved a mandamus action, I disagree with such a narrow reading where the Supreme Court's analysis expressly addressed legal issues and principles that are relevant and applicable **outside** the mandamus context. Moreover, the Majority concludes that the footnote in *Crozer Chester II* that recognized a latent ambiguity in Section 127.255(1) of the Regulations due to that provision's focus on denials of liability for the alleged work injury, where Section 301(f.1)(5) refers to denying "liability for a 'particular treatment'," does not govern this matter because Section 127.255(1) should be read as applying in situations only where the employer denies liability for the alleged work injury and any treatment until the resolution of a claim petition. *UPMC Benefit Mgmt. Servs.*, __ A.3d at __, slip op. at 16-17. I believe this reading overlooks the Supreme Court's subsequent discussion that distinguishes reasonableness and necessity challenges from challenges to liability for a particular treatment as not being related to an accepted injury. *Crozer Chester II*, 22 A.3d at 195.

As the Supreme Court stated, "[i]n cases in which **liability for a particular treatment is at issue**, the **claimant**, not the medical provider, **must pursue compensation** before a WCJ **in the regular course**." *Id.* (emphasis added). Even where there is an "open" Notice of Compensation Payable, that agreement may be "binding with respect to liability for the injury," but it "is **not dispositive**" on

RCJ – 9

**liability** for a **particular treatment**, does not bar an insurer from disputing liability for a particular treatment, and cannot "compel[] a fee review on the merits if an insurer, rightly or wrongly, refused payment." *Id.* at 197 (emphasis added). Questions regarding "whether a [provider is] entitled to a payment **at all**," which is what a causation-based challenge involves, are "properly viewed as the province of specially qualified [WCJs], to be rendered in the context of claimant-insurer litigation." *Id.* at 198 (emphasis added). I would conclude that *Workers' First*, *Omni Pharmacy*, and now the Majority, are inconsistent with *Crozer Chester II*.

Finally, Pharmacy argues, as the pharmacy had in *Workers' First*, that the Act does not provide a direct means through which a provider can challenge an insurer's causation-based denial and, therefore, infringes upon its due process rights. (Pharmacy's Brief at 20.) To the extent that providers alone, without a claimant's involvement, cannot challenge a causation-based denial of payment under Section 306(f.1), this is what the plain language of the Act provides and there may be reasons why the Act was crafted that way. If providers alone, without a claimant, require a process to challenge a causation-based denial of payment under the Act, it is the province of the General Assembly, and not this Court, to craft one. It bears emphasizing that "courts have no authority to add or insert language into a statute and should not, through interpretation, add a requirement that the General Assembly did not include." *Township of Washington v. Township of Burrell*, 184 A.3d 1083, 1089 (Pa. Cmwlth. 2018) (internal quotation and citation omitted). This is particularly important in legislation in which the interests of injured workers, employers/insurers, medical providers, and all stakeholders are balanced and considered.

Such view is confirmed, I believe, by our Supreme Court's recent decision in *Keystone RX LLC v. Bureau of Workers' Compensation Fee Review Hearing Office (CompServices, Inc./Amerihealth Casualty Services)*, 265 A.3d 322 (Pa. 2021) (*Keystone RX*). While Pharmacy contends that *Keystone RX* has no bearing on this matter, and the Majority holds that *Keystone RX* does not preclude affirming, I disagree. *Keystone RX* offers insight into the Supreme Court's view of this Court's recent interpretations of the Act as, in some cases, exceeding its authority. In *Keystone RX*, the Supreme Court questioned this Court's "engraft[ing] onto the Act a requirement" not in the Act in order "[t]o remedy [a] perceived infirmity" related to non-treating providers not receiving due process under the Act. 265 A.3d at 329. In disagreeing with this Court's determination that due process required non-treating providers be given notice and an opportunity to intervene in UR proceedings to protect their property interests, our Supreme Court held that, first, there was no statutory support for allowing intervention, and second, when an insurer invokes the UR process, the non-treating provider is not entitled to payment unless and until the UR process finds the treatment reasonable and necessary. *Id.* at 333. If the insurer is successful, "the Act makes clear that the non-treating provider does not have a constitutionally-protected property interest in goods or services that it dispensed." *Id.* As there is no protected property interest when the UR process is invoked, due process is not implicated. *Id.* In his concurring opinion, Justice Wecht wrote separately to expressly disapprove of the "judicial re-writing of the Act," which would "usurp the General Assembly's policy-making authority and exceed the parameters of legislation by engrafting statutory requirements that the General Assembly chose to omit." *Id.* at 333-34 (Wecht, J., concurring).

Similar to the effect of the invocation of the UR process discussed in *Keystone RX*, the effect of an insurer challenging the causal relationship between a treatment and a work injury is that the non-treating provider has no entitlement to payment unless and until the causal relationship is established. This supports the conclusion that the fee review application is premature because, if no causal relationship is established, "the Act makes clear that the non-treating provider does not have a constitutionally-protected property interest in goods or services that it dispensed." *Keystone RX*, 265 A.3d at 333. Further, similar to this Court's language in *Keystone RX* that engrafted due process provisions into the UR process so as to allow non-treating providers to participate, *Workers' First*'s inclusion of causation issues into the UR process, absent statutory authorization, appears to be the type of "judicial re-writing" of which Justice Wecht disapproved. *Keystone RX*, 265 A.3d at 333 (Wecht, J., concurring). As Justice Wecht explained in his concurring opinion, "[e]ntities left out . . . are free to petition the legislature for redress" but such decisions "are for the policy-making branches. They are not for the judiciary." *Id.* at 334. Accordingly, I would conclude that *Workers' First*, *Omni Pharmacy*, and the Majority are inconsistent with our Supreme Court's recent observations in *Keystone RX*.

For these reasons, respectfully, I would reverse and, therefore, must dissent to the thoughtful Majority opinion.

_____
**RENÉE COHN JUBELIRER,** President Judge

RCJ – 12