IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Norman Rickley,                         :
                        Petitioner       :
                                         :
            v.                           :       No. 524 C.D. 2023
                                         :       Argued: February 6, 2024
Dandy Service Corp. (Workers'            :
Compensation Appeal Board),              :
                        Respondent       :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                          FILED:  April 4, 2024

            Norman Rickley (Claimant) petitions for this Court's review of the
adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the
decision of the Workers' Compensation Judge (WCJ).  The WCJ granted Claimant's
claim petition against Carrols Corporation with respect to his injury of November
27, 2017, and denied Claimant's petition to review treatment filed against Dandy
Service Corporation with respect to his March 29, 2006, work injury.  Claimant
argues that the WCJ erred by placing the burden on Claimant to prove that his
ongoing treatment was related to the March 29, 2006, injury and by crediting
equivocal medical evidence.  Upon review, we affirm in part and vacate in part the
Board's adjudication and remand the matter for further proceedings consistent with
this opinion.

**Background**

On March 29, 2006, Claimant, while employed by Dandy Service Corporation (Dandy Service), sustained a low-back injury. On June 15, 2010, the WCJ approved a compromise and release (C&R) agreement settling indemnity benefits but leaving Dandy Service responsible for Claimant's ongoing medical expenses. That agreement provided that Claimant's injury

> was formally recognized as a low back strain via Notice of Compensation Payable. The parties specifically agree that this Compromise and Release Agreement resolves any and all diagnoses, conditions and/or ailments which are, or which may potentially be, related to the Claimant's 3/29/2006 injury.

Reproduced Record at 621a (R.R. __).

On September 10, 2020, Claimant filed a claim petition against Carrols Corporation (Carrols) alleging that he sustained a low-back injury on November 27, 2017. On October 14, 2020, Claimant filed a review medical petition against Dandy Service for refusing to pay for medical bills related to the 2006 work injury. The two petitions were consolidated for hearings before the WCJ.

Claimant testified that on March 29, 2006, while releasing a fifth wheel on a tractor trailer, he "yanked [his] back out of place." Notes of Testimony (N.T.), 1/20/2021, at 21; R.R. 148a. This injury required several surgeries including lumbar decompression surgery and implants. He also treated with Dr. Jon A. Levy, M.D., and underwent pain management in the form of therapy and narcotic pain medication.

In December of 2016, Claimant stopped taking pain medication in order to pursue employment with Burger King, a franchise operated by Carrols. On November 27, 2017, a co-worker bumped Claimant's back with a bread rack. The store manager sent him to urgent care, which did x-rays but could not "find anything

2

that was really serious other than the issues that were already there." N.T., 1/20/2021, at 29-30; R.R. 156a-57a. Claimant went back to work the following day. Claimant also worked part-time as a driver for Advance Auto Parts and NAPA Auto Parts from May 2019 to May 2020.

Claimant testified that his "back complaints have been an issue pretty much ever since 2006." N.T., 1/20/2021, at 35; R.R. 162a. The November 27, 2017, incident at Burger King did not change the symptoms he had been experiencing as a result of the 2006 work injury. Between January 2018 and May 2020, he treated with his primary care physician for low-back pain. He did not "go into pain management" because he did not want "to be working and driving and having pain medicine in [his] system." N.T., 3/24/2021, at 12; R.R. 180a.

Claimant testified that he experienced a substantial increase in pain around February of 2020, which has become progressively worse. A specific event did not trigger the increase in pain; rather, he "just woke up with this one day." N.T., 3/24/2021, at 27; R.R. 195a. Claimant was hospitalized in June 2020. In July 2020, he fell at home carrying groceries and has been hospitalized several times since then. On July 15, 2022, he had low-back surgery.[1] At present, he can barely walk.

Claimant presented the testimony of Dr. Levy, a board-certified orthopedic surgeon who performed the lumbar decompression and fusion on Claimant to treat his 2006 work injury. In April 2007, Dr. Levy found that Claimant still had low-back pain and foot numbness, and in December 2013, Claimant reported "chronic low back pain." Levy Dep., 11/15/2021, at 8-9; R.R. 344a-45a.

---

[1] The record shows that the 2022 surgery was paid for by his medical insurance through the "Pennsylvania Department of Human Services." N.T., 8/3/2022, at 11; R.R. 258a. Claimant's testimony on his recent medical challenges was offered as "more of a background and current status update." N.T., 8/3/2022, at 14; R.R. 261a.

3

The notes from Claimant's visit with Dr. Levy on January 10, 2018, report post-laminectomy syndrome, *i.e.*, chronic pain resulting from his back surgeries. On May 6, 2020, Claimant complained to Dr. Levy about a sudden increase in pain and intermittent loss of bladder control, for which Dr. Levy diagnosed Claimant with "possible early cauda equina syndrome."[2]  R.R. 514a.

At his visit to Dr. Levy on August 18, 2021, Claimant presented with multiple issues including stroke and cervical complaints that Dr. Levy believed were degenerative in nature and not work-related.  Dr. Levy attributed the development of incontinence to Claimant's "cervical situation, and unrelated to his lumbar situation."  Levy Dep. at 22; R.R. 358a.  As to Claimant's low-back pain, Dr. Levy testified that "the inciting event was the [20]06 event," which "requires ongoing treatment for the rest of [Claimant's] life," and the November 2017 injury at Burger King was "a contributing factor as well."  Levy Dep. at 15; R.R. 351a.  Dr. Levy testified that from a surgical standpoint, Claimant "will never be fixed[;]" the goal is to "make his life more manageable" through long-term pain management.  Levy Dep. at 14-15; R.R. 350a-51a.

Carrols presented the deposition testimony of Scott G. Rainey, D.O., a board-certified orthopedic surgeon who performed an independent medical evaluation (IME) of Claimant on October 12, 2021, with respect to the 2017 work injury.  Dr. Rainey opined that Claimant sustained a work-related lumbar sprain on November 27, 2017, that was resolved as of October 12, 2021, and did not require further treatment.  Dr. Rainey opined that Claimant's overall diagnosis was post-laminectomy syndrome, which requires treatment as symptoms appear.  Pain

---

[2] Dr. Levy's deposition did not explain the nature or cause of this syndrome.  Dr. Jocelyn Idema's deposition testimony indicated that the cauda equina syndrome would cause, *inter alia*, lower extremity weakness and urinary incontinence.  Idema Dep. at 39-40; R.R. 484a-85a.

4

management is a "common and reasonable" treatment for post-laminectomy syndrome. Rainey Dep. at 26; R.R. 562a.

Dandy Service presented the deposition testimony of Jocelyn Idema, D.O., who is board certified in orthopedic medicine and who performed an IME of Claimant on October 22, 2021. Dr. Idema testified that Claimant presented with constant low-back pain, bilateral lower extremity and groin pain, leg weakness and numbness, and urinary incontinence. Dr. Idema opined that Claimant's 2020 medical treatment was not related to his 2006 back injury because Dr. Levy's medical notes of May 6, 2020, indicated "a very acute onset and complete change in what [Claimant] had been experiencing as his baseline." Idema Dep. at 25; R.R. 470a. Dr. Idema opined as follows:

> [Counsel:] And what is your opinion with respect to the causal relationship of that medical treatment to the events in question?
>
> [Dr. Idema:] The patient didn't report a specific injury. However, Dr. Levy's description of the physical exam having been dramatically different from his January 10th, 2018, as well as a potential for early onset cauda equina, suggests an acute injury subsequent to, and unrelated to, the injury at Burger King.

Idema Dep. at 20-21; R.R. 465a-66a.

Dr. Idema acknowledged that Claimant has developed post-laminectomy syndrome as a result of the surgeries done to treat his 2006 work injury. Dr. Idema also acknowledged that Claimant's post-laminectomy syndrome will require ongoing care and treatment depending on "the symptoms of the patient[.]" Idema Dep. at 36-37; R.R. 481a-82a. She explained that "[s]ome people carry that diagnosis just because they have had surgery, but don't require any further treatment." Idema Dep. at 37; R.R. 482a. Dr. Idema agreed that Claimant's ongoing

low-back pain and lower extremity numbness and tingling were related to the original 2006 injury.

Dr. Idema opined that only three medical treatments related to the November 27, 2017, injury at Burger King: the November 28, 2017, visit to MedExpress; the December 2, 2017, visit to MedExpress; and the January 10, 2018, visit with Dr. Levy. These treatments were unrelated to the 2006 work injury.

**WCJ Decision and the Board's Adjudication**

The WCJ granted, in part, Claimant's claim petition and denied Claimant's review medical petition.

The WCJ credited the testimony of Drs. Levy, Rainey, and Idema that Claimant's diagnosis from his 2006 work injury is chronic post-laminectomy syndrome related to the surgery done to treat his 2006 work injury. Crediting Dr. Rainey's testimony, the WCJ found that the 2017 injury at Burger King constituted a temporary aggravation of Claimant's condition. The WCJ also credited Dr. Idema's testimony that only the November 28, 2017, and December 2, 2017, visits to MedExpress and the January 10, 2018, office visit with Dr. Levy were causally related to the 2017 work injury at Burger King.

The WCJ credited the testimony of Drs. Rainey and Idema that Claimant's medical treatment beginning on May 6, 2020, was unrelated to the 2006 work injury. Rather, Claimant's cervical pain and incontinence stemmed from severe cervical degenerative disc disease and not from the 2006 work injury.

Claimant appealed to the Board and argued, *inter alia*, that the record did not support the WCJ's finding that his current medical treatment was unrelated to the 2006 work injury. All the expert witnesses agreed that Claimant's post-laminectomy syndrome resulted from the 2006 work injury, which requires ongoing

6

medical treatment. However, the Board found that post-laminectomy syndrome did not necessarily require treatment, noting that Dr. Idema stated, specifically, that "[s]ome people carry that diagnosis just because they have had surgery, but don't require any further treatment." Idema Dep. at 37; R.R. 482a. The Board held that Claimant did not meet his burden to prove, through unequivocal medical testimony, that the medical bills, after December 8, 2016, and those beginning on May 6, 2020, were related to the March 29, 2006, injury. By adjudication dated April 26, 2023, the Board affirmed the WCJ's decision.

Claimant appealed to this Court.

## Appeal

On appeal,[3] Claimant raises three issues, which we consolidate into two for clarity. First, Claimant argues that the Board erred in affirming the WCJ's determination that Claimant had the burden to prove that his ongoing treatment was related to the 2006 work injury. Second, Claimant argues that the Board erred in affirming the WCJ's determination that Claimant did not meet his burden of proof. All medical experts confirmed that Claimant has post-laminectomy syndrome caused by the 2006 work injury. Further, Claimant contends that Dr. Idema's testimony that his current treatment was unrelated to the 2006 work injury was equivocal and speculative.

## I. Burden of Proof

In his first issue, Claimant argues that Dandy Service had the burden to prove that his ongoing medical treatment is unrelated to the 2006 work injury.

---

[3] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

7

Claimant's low-back pain and lower extremity numbness and tingling are not new complaints but, rather, related to his post-laminectomy syndrome, which all expert witnesses acknowledged stemmed from the 2006 work injury. The record is devoid of any evidence that his low-back pain has ever subsided or resolved; Claimant "merely weaned himself from pain medication" to seek employment. Claimant Brief at 23. Where, as here, the nexus between the symptoms and the work injury is obvious, the employer bears the burden to prove that the symptoms are not related to the work injury. Claimant Brief at 22 (citing *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443, 447-48 (Pa. Cmwlth. 2002)).

Dandy Service responds that Claimant's current condition is not obviously related to the 2006 work injury. His last treatment was in December 2016, and Claimant did not seek treatment again until May 2020. Claimant developed a significant increase in pain in February 2020, which indicated "a very acute onset and complete change in what [Claimant] had been experiencing as his baseline." Idema Dep. at 25; R.R. 470a. The November 27, 2017, injury at Burger King was an intervening injury that made the nexus less obvious. Because the causal connection between Claimant's symptoms and the 2006 work injury was not obvious, Claimant carried the burden of proving that his current symptoms are related to his 2006 injury. Dandy Service Brief at 13 (citing *Kurtz*, 794 A.2d at 447).

Dandy Service accepted responsibility for Claimant's back injury and remains responsible for "all reasonable, necessary *and causally related medical expenses*" pursuant to the C&R agreement. R.R. 620a, 622a (emphasis added). Likewise, under Section 301(c)(1) of the Workers' Compensation Act,[4] an employer

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1).

is liable to pay for a claimant's medical expenses that arise from and are caused by the work-related injury.

Where "a claimant receives medical treatment for new symptoms that allegedly arise from the compensated injury, and the employer refuses to pay the associated bills, the burden of establishing that the symptoms and treatments are related to the compensable injury turns on whether the connection is obvious." *Kurtz*, 794 A.2d at 447 (emphasis omitted).  We have explained as follows:

> If the new symptoms and the compensable injury are obviously related, and benefits have not been terminated, then the claimant will benefit from the presumption that the new symptoms are related to the compensable injury and, thus, his employment, and it will be the burden of the employer to prove that the new symptoms complained of are unrelated to the compensable injury. If, however, the connection is not obvious, then the burden will be on the claimant to establish the connection through unequivocal medical testimony.

*Id*. at 448.

"An obvious connection involves a nexus that is so clear that an untrained lay person would not have a problem in making the connection between the new symptoms and the compensated injury; the new symptoms would be a natural and probable result of the injury." *Id*. at 447-48 (internal quotation omitted). The causal connection may be obvious where the claimant experiences pain in the same body part as the original work injury. *Haslam v. Workers' Compensation Appeal Board (London Grove Communication)*, 169 A.3d 704, 710 (Pa. Cmwlth. 2017) (citing *Kurtz*, 794 A.2d at 448).

In *Kurtz*, the employer accepted responsibility for the claimant's head injury, which was described as "a grade two concussion with retrograde amnesia and severe paracervical spasms." *Kurtz*, 794 A.2d at 445.  The claimant underwent

9

surgery, which relieved the head pain, and he resumed his pre-injury job with the employer. A year later, the claimant sought medical treatment for pain that emerged "in the area of the original injury," but the employer refused to pay for his treatment. *Id*. The WCJ determined that the claimant failed to prove that his current condition was causally related to his work injury, and the Board affirmed.

On appeal to this Court, the claimant argued that his new symptoms, which included dizziness, headaches, and a burning sensation in the "same area as his original head pain [–] just two inches from the scar left by his surgery" – were "obviously related" to his original work-related injury, and the burden should be on the employer "to establish that the symptoms [were] unrelated to the original [] injury." *Kurtz*, 794 A.2d at 448. We agreed, explaining as follows:

> It is difficult to imagine that similar pain appearing in such close proximity to the area of the original injury is not a natural and probable result of the original injury and, therefore, obviously related to such injury.[] *Although the pain-free period of time between [the c]laimant's surgery and the recurrence of pain does not bolster the obviousness of the connection, the passage of time alone will not defeat it.*

*Id*. (emphasis added) (footnote omitted). Consequently, we determined that it was the employer's burden to prove that the claimant's new symptoms were unrelated to the original compensable work injury, and the employer did not sustain its burden in this regard. Thus, we reversed the Board.

By contrast, in *Boatman v. Workers' Compensation Appeal Board (Bortner Bros, Inc.)* (Pa. Cmwlth., No. 1771 C.D. 2017, filed August 3, 2018) (unreported),[5] the claimant sustained a work-related injury to his right shoulder. The

---

[5] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

C&R agreement precisely described the work injury as "a right shoulder rotator cuff tear with subacromial impingement" and "acromioclavicular arthritis." *Id.*, slip op. at 6 (quotation omitted). The claimant later sought medical treatment for glenohumeral arthritis of the right shoulder. We held that the nexus between the claimant's work injury and glenohumeral arthritis was not obvious given the narrow description of the work injury in the C&R agreement. We held that the claimant carried the burden to prove the connection to his work injury, and he failed to meet this burden.

Here, Claimant's symptoms as of May of 2020 included low-back pain, bilateral lower extremity and groin pain, leg weakness and numbness, incontinence, and cervical pain. "An 'obvious' connection 'involves a nexus that is so clear that an untrained lay person would not have a problem in making the connection between' the new symptoms and the compensated injury; the new symptoms would be a 'natural and probable' result of the injury." *Kurtz*, 794 A.2d at 447-48 (quoting *Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursey, Inc.)*, 595 A.2d 781, 784 (Pa. Cmwlth. 1991)). The C&R agreement described the 2006 work injury as a low-back strain; it made no mention of urinary incontinence or cervical problems. As in *Boatman*, the causal connection between the compensable injury and these new symptoms was not obvious, and Claimant was not entitled to a presumption of their relatedness. *Boatman*, slip op. at 11-12.

However, the connection between Claimant's low-back pain, leg tingling, and leg numbness and the 2006 work injury is obvious because these symptoms emerged in the same area, *i.e.*, the low back. In *Boatman*, the C&R agreement gave a detailed description of the specific parts of the right shoulder that were injured. Here, by contrast, the C&R agreement generally described the

11

accepted work injury as "low back strain." R.R. 621a. It is undisputed that Claimant has not been pain free since the 2006 work injury; he stopped taking narcotic pain medicines merely to seek employment. While there was a 3½-year gap between the last pain treatment in December 2016 and the treatment beginning May 2020, "the passage of time alone will not defeat [the obviousness of the connection]." *Kurtz*, 794 A.2d at 448. Further, Claimant's medical benefits have not been terminated. Dandy Service remains responsible for "all reasonable, necessary *and causally related medical expenses*[.]" R.R. 620a (emphasis added). Therefore, Claimant was entitled to a presumption that his low-back pain, leg tingling, and leg numbness were related to the 2006 work injury. *See Kurtz*, 794 A.2d at 448. The burden rested with Dandy Service to prove that the treatment for low-back pain, leg tingling, and leg numbness beginning in May of 2020 was unrelated to the 2006 work injury.

In sum, we conclude that the Board erred in holding that Claimant was required to prove that his ongoing low-back pain, leg tingling, and leg numbness were related to the 2006 work injury. Because the nexus between his low-back pain, leg tingling, and leg numbness and his 2006 work injury was obvious, the burden was on Dandy Service to prove that these symptoms were unrelated to the compensable injury. However, the Board did not err in holding that Claimant carried the burden to prove that his treatment beginning in May of 2020 for such symptoms as incontinence and cervical problems was related to the 2006 work injury. The causal connection is not obvious for those injuries.

## II. Substantial Evidence

Claimant argues, next, that the Board erred in affirming the WCJ's determination that his treatment beginning in May of 2020 was unrelated to the 2006 work injury. All medical experts confirmed that Claimant has post-laminectomy

12

syndrome resulting from the 2006 work injury, which causes low-back pain and leg numbness and tingling. Further, Dr. Idema's testimony was equivocal because while she testified that Claimant's current treatment was unrelated to the 2006 work injury, she later recanted by stating that Claimant's low-back pain and lower extremity numbness and tingling were related to the compensable injury. This rendered her testimony equivocal. Claimant also contends that Dr. Idema's testimony that there must have been an intervening injury prior to February of 2020 that triggered his symptoms is speculative because no evidence substantiates this theory. Claimant contends that Dr. Idema's equivocal and speculative testimony is "incompetent as a matter of law." Claimant Brief at 20-21.

Dandy Service counters that Dr. Idema's opinion that Claimant's 2020 medical treatment was unrelated to the compensable 2006 injury is supported by the record, which established a significant increase in pain in February of 2020. In addition, Claimant worked a long shift over a weekend and had an acute onset of symptoms that led him to be hospitalized. Dr. Idema opined that Claimant's 2020 symptoms were acute and unrelated to the work injury.

Equivocal medical testimony cannot support a finding of causation. *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 954 (Pa. Cmwlth. 2008). Whether medical evidence is equivocal is an issue of competence, not credibility, that is fully reviewable by this Court. *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). Medical testimony is equivocal if, after a review of the expert's entire testimony, it is based merely on possibilities. *Id*. A medical opinion is unequivocal if the medical expert, based upon a factual foundation, testifies that in his professional opinion a certain condition exists. *Id.*

13

In *Moore v. Workers' Compensation Appeal Board (American Sintered Technologies, Inc.)*, 759 A.2d 945 (Pa. Cmwlth. 2000), the WCJ credited the medical expert witness's 1994 testimony that the claimant was fully recovered from his work injury and, thus, granted the employer's termination petition. In doing so, the WCJ rejected that same expert's 1997 opinion, which recanted his 1994 opinion. On appeal, we held that this recantation rendered the witness's 1994 testimony equivocal and, thus, could not support a finding that the claimant had fully recovered from her work injury.

Here, Dr. Idema testified, *inter alia*, that her opinion was based upon a review of Dr. Levy's notes of May 6, 2020, which indicated "a very acute onset and complete change in what [Claimant] had been experiencing as his baseline." Idema Dep. at 25; R.R. 470a. Dr. Idema explained as follows:

> [Counsel:] And what is your opinion with respect to the causal relationship of that medical treatment to the events in question?
>
> [Dr. Idema:] The patient didn't report a specific injury. However, Dr. Levy's description of the physical exam having been dramatically different from his January 10th, 2018, as well as a potential for early onset cauda equina, suggests an acute injury subsequent to, and unrelated to, the injury at Burger King.

Idema Dep. at 20-21; R.R. 465a-66a. Dr. Idema stated that the diagnosis of cauda equina explained Claimant's loss of leg function and urinary incontinence and, as an acute condition, it could not relate to the injury that occurred 14 years earlier.

On cross-examination, Dr. Idema testified that she understood Claimant's 2006 work injury as post-laminectomy syndrome, and she agreed that some elements of the "ongoing care and treatment would be necessary to address the post-laminectomy syndrome[,]" depending on "the symptoms of the patient." Idema Dep. at 36-37; R.R. 481a-82a. She further testified as follows:

14

[Counsel:] At the time of your examination, were there any symptoms that you attributed to either the 2006 or the 2017 injuries?

[Dr. Idema:] Still ongoing?

[Counsel:] At the time of your evaluation.

[Dr. Idema:] *Patient still reported low back pain and lower extremity numbness and tingling. That would be related to the original injury*.

Idema Dep. at 41; R.R. 486a (emphasis added).

While there is inconsistency in Dr. Idema's testimony, this does not render her testimony equivocal. *Copperweld Corporation v. Workmen's Compensation Appeal Board (Smith)*, 458 A.2d 651, 652 (Pa. Cmwlth. 1983) ("Unequivocal evidence is not, ipso facto, rendered equivocal by an apparently inconsistent statement elicited during cross-examination."). The inconsistency does not rise to the level of recant. The WCJ rationalized Dr. Idema's testimony as suggesting that the treatment beginning in May of 2020 was occasioned by Claimant's new symptoms, *i.e.*, "a very acute onset and complete change in what [Claimant] had been experiencing as his baseline." Idema Dep. at 25; R.R. 470a. In affirming the WCJ, the Board took note of Dr. Idema's testimony that "[s]ome people carry that diagnosis [of post-laminectomy syndrome] just because they have had surgery, but don't require any further treatment." Idema Dep. at 37; R.R. 482a. The Board understood Dr. Idema's testimony to mean that Claimant no longer needed treatment for post-laminectomy syndrome.

Dr. Idema's testimony was not speculative. While Dr. Idema did not identify an incident that caused Claimant's new symptoms in 2020, she did testify that there had to be an incident to cause an acute cauda equina.

15

Crediting Dr. Idema's testimony, the WCJ rejected Claimant's proposition that his new symptoms that manifested in 2020, such as urinary incontinence and cervical problems, naturally progressed from the 2006 work injury without an intervening event or injury.[6] "The rationalization of a witness' testimony and the acceptance of those portions thereof on which to make findings and an award is the province of the [WCJ], and is not a review prerogative of this Court." *Blue Bell Printing v. Workmen's Compensation Appeal Board (Montgomery Publishing Company)*, 539 A.2d 933, 935 (Pa. Cmwlth. 1988). The WCJ's finding that Claimant's new symptoms that developed in 2020 were unrelated to the 2006 work injury is supported by competent medical evidence.

This does not end our analysis. The question remains as to whether the WCJ's finding that Claimant no longer required treatment for his post-laminectomy syndrome is supported by substantial evidence. As previously explained, the causal connection between the low-back pain, leg tingling, and leg numbness and the 2006 work injury was obvious. Thus, the burden fell on Dandy Service to prove that these symptoms were unrelated to the work injury. We conclude that Dandy Service failed to meet its burden.

The WCJ found, as fact, that Claimant has post-laminectomy syndrome resulting from the 2006 work injury, which causes low-back pain, leg tingling, and leg numbness. The WCJ also found that Claimant had been on pain management

---

[6] Generally, "[w]hen there is an intervening non-work injury, [the] claimant must then prove that his resultant disability was so immediately and directly connected with the prior work-related injury that it would naturally and probably result therefrom; that is to say, that the first accident was the proximate predisposing cause of the resultant disability." *Matlack, Inc. v. Workmen's Compensation Appeal Board (Zwald)*, 494 A.2d 510, 512 (Pa. Cmwlth. 1985) (quoting *GTE Sylvania v. Workmen's Compensation Appeal Board (Lydon)*, 458 A.2d 1050, 1051 (Pa. Cmwlth. 1983)).

until December of 2016. At that point, he stopped taking narcotic pain medications not because his pain resolved, but because he wanted to pursue employment. All expert witnesses agreed that Claimant has never been pain free. While Claimant has experienced additional symptoms in 2020, which the WCJ found unrelated to the 2006 work injury, Claimant's chronic low-back pain and leg numbness and tingling resulting from the post-laminectomy syndrome continues to be his "baseline." *See* Idema Dep. at 25; R.R. 470a. There is no evidence in the record that Claimant no longer requires treatment for the post-laminectomy syndrome. In this regard, the WCJ erred.

For the foregoing reason, we vacate the Board's adjudication insofar as it affirmed the WCJ's denial of Claimant's review medical petition and remand the matter to the Board, and further to the WCJ, to make findings on what medical bills incurred beginning May 2020 were related to pain management for Claimant's low-back pain and leg numbness and tingling.

### Conclusion

Because the nexus between Claimant's low-back pain and leg numbness and tingling and the 2006 work injury is obvious, the burden was on Dandy Service to prove that these symptoms were unrelated to the 2006 injury. However, Claimant carried, but failed to meet, the burden to prove that the treatment beginning in May of 2020 for his new symptoms, including urinary incontinence and cervical problems, were related to the 2006 work injury. For those symptoms, the causal connection was not obvious.

We further hold that Dr. Idema's testimony was not equivocal or speculative insofar as she opined that Claimant's new symptoms that developed in 2020 were unrelated to the 2006 work injury. All expert witnesses agreed that

17

Claimant's post-laminectomy syndrome was related to the 2006 work injury, which syndrome continues to cause his low-back pain, leg tingling, and leg numbness. Therefore, Dandy Service failed to meet its burden that Claimant's ongoing low-back pain, leg tingling, and leg numbness was unrelated to the 2006 injury.

We affirm the Board's adjudication insofar as it affirmed the WCJ's grant of the claim petition, which the parties did not challenge. We vacate the Board's adjudication insofar as it affirmed the WCJ's denial of the review medical petition and remand the matter to the Board, with direction that the Board remand to the WCJ, to make findings on what medical bills as of May 2020 and thereafter were related to pain management for Claimant's low-back pain, leg tingling, and leg numbness.

_____
MARY HANNAH LEAVITT, President Judge Emerita

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Norman Rickley, : 
               Petitioner : 
                : 
         v. :   No. 524 C.D. 2023
                : 
Dandy Service Corp. (Workers' : 
Compensation Appeal Board), : 
            Respondent : 

# **O R D E R**

AND NOW, this 4th day of April, 2024, the adjudication of the Workers' Compensation Appeal Board, dated April 26, 2023, in the above-captioned matter, is AFFIRMED in part and VACATED in part. The matter is REMANDED to the Workers' Compensation Appeal Board with direction that the Board remand to the Workers' Compensation Judge to make findings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita